**Affirmed and Opinion filed November 25, 2014.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-13-00149-CR**
**NO. 14-13-00150-CR**
**NO. 14-13-00156-CR**

---

**LARRLYON DESHUN WILLIAMS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause Nos. 10-DCR-054995A, 11-DCR-056930A, 10-DCR-054992A**

---

### O P I N I O N

These three appeals, which we consolidate into one, stem from a bank robbery followed by a car chase and gunfight. Appellant Larrlyon Deshun Williams was convicted of aggravated robbery, aggravated assault, and aggravated assault of a public servant. In his first issue, appellant challenges the legal sufficiency of the evidence to support his convictions. We hold the evidence was legally sufficient to convict appellant of each offense under the law of parties. In

his second issue, appellant contends the trial court violated Article 36.16 of the Texas Code of Criminal Procedure when it submitted a corrected punishment charge to the jury after it had begun deliberating. We hold the trial court did not err in correcting the erroneous charge. Appellant raises a third issue solely with regard to his conviction for aggravated assault with a deadly weapon, contending that the trial court erred by including a conspiracy instruction in the jury charge. We hold that because there was legally sufficient evidence to convict appellant as a co-conspirator, the court did not err by including the instruction. We therefore affirm the trial court's judgment.

## BACKGROUND

On the morning of May 22, 2010, Mouafad Kazzaz robbed a Bank of America located in Sugar Land, Texas. The State offered evidence that appellant was his getaway driver.

Dorothy Donovan, the bank manager, testified that Kazzaz walked into the bank, pulled out a gun, pointed it at her chest, and announced, "Nobody move. No alarms. I'll shoot you." She testified that she feared imminent bodily injury and death. Kazzaz handed the bank tellers a bag and instructed them to fill it quickly. He threatened to shoot them if they did not comply. During the heist, Kazzaz had a bluetooth device in his ear, allowing him to communicate with individuals outside the bank. Kazzaz made off with approximately $76,000. After Kazzaz left the bank, Karen Emert, one of the bank tellers, observed Kazzaz stop next to a nearby store and then enter a plain white van.

Deputy Charles Scott learned of the bank robbery through the radio in his car. As he was driving south on Highway 99, Scott saw a white van traveling north. He testified that he made eye contact with the driver, and that the driver continued staring in his direction after they passed each other. Scott then turned

2

around in the hope of conducting a traffic stop. Because the van's speed increased significantly, Scott had to pursue at a rate exceeding 100 miles per hour. Once he caught up to the van, Scott checked the license plate and found that it was registered to a four-door car. Scott kept following the van and activated his car's overhead lights. The van headed down an isolated road, slowed down, and eventually came to a sudden stop. The rear doors then flew open and Kazzaz began shooting a gun at Scott. Scott took cover in his police car but nonetheless was hit in his head and arm. At some point Kazzaz stopped firing, and Scott realized the van had left the scene. He notified dispatch that he had been injured and provided the direction the van had fled. Scott was subsequently flown to a hospital. As a result of the shooting, he suffered permanent nerve damage to his fingers, and his left arm is now disabled. There is a bullet lodged behind his left eye that may cause him to lose his eyesight.

The van was spotted by several officers and a chase ensued, with shots being fired at the officers pursuing the vehicle. Arwen McGaw was driving several members of her family to brunch when she saw the white van headed in her direction. She heard a loud sound and decided to pull over because she thought one of the tires of her truck had been punctured. She then began feeling pain in her abdomen and left leg. McGaw had been struck by a stray bullet fired from the van. She was taken to the hospital and three inches of her intestine were removed during surgery. She suffered permanent nerve damage.

Eventually the van entered a dead-end cul-de-sac. After another exchange of gunfire with the officers, the assailants attempted to flee. The driver rammed the van into an iron fence and it bounced off, striking an officer's car. The van then stopped, however, because its internal computer shut down the fuel system. Appellant exited the driver's side door. He asked the officers not to shoot and

surrendered. One of the deputies on the scene heard noise emanating from the van and fired six more rounds into the vehicle. Appellant then opened the back doors of the van, and Kazzaz was found dead.

Kim Oreskovich, a crime scene investigator for the Fort Bend County Sheriff's Office, testified that a rifle case and two duffle bags were found inside the van. One of the duffle bags contained weapons, magazines, and ammunition. It also contained different skin creams, fake mustaches, and fake hair. She termed those items a "robber's kit." Several guns were recovered from the van, including an AK-47. One of the guns was found underneath the passenger seat. Two cell phones and a bluetooth earpiece were also recovered from the scene. One cell phone was found inside the van and one was found in the grass right outside. Many casings were also recovered, which Oreskovich stated was consistent with the use of an AK-47. The money from the robbery was found inside a cooler, which had been tied down. An extra license plate with tape attached to the back side was also found. Two different license plate numbers for the van had been reported during the chase.

The police investigation revealed that appellant had been at that particular Bank of America branch two days before the robbery, and that calls between the two cell phones had occurred during the heist. Another vehicle, appellant's Chevy Suburban, was also searched. One casing was found inside the vehicle, and police determined that the casing matched one of the guns recovered from the white van.

Appellant was subsequently indicted for aggravated robbery, aggravated assault of a police officer, and aggravated assault with a deadly weapon. The jury convicted appellant of all three offenses. During the punishment phase, the trial court discovered it had mistakenly omitted a few words from the jury charge regarding the availability of parole. The court decided to correct the charge even

4

though the jury had already begun deliberating. Appellant objected to the correction on the grounds that none of the instances in which a trial court may provide additional charges to the jury under Texas Code of Criminal Procedure Article 36.16 had been met. Appellant conceded, however, that the charge originally given by the court was incorrect. The court asked if either of the parties desired additional argument, and both the state and appellant declined. Appellant was subsequently sentenced to two 45-year prison terms, one 30-year prison term, and assessed two fines of $10,000. This appeal followed.

## ANALYSIS

### I. There is legally sufficient evidence that appellant was a party to the offenses.

Appellant challenges the sufficiency of the evidence that he was guilty of the aggravated robbery, aggravated assault with a deadly weapon, and aggravated assault of a public servant. Appellant asserts that the evidence implicating him was completely contradictory because none of the officers observed him firing a gun, and none of the bank employees saw him in the bank the day of the robbery. We note at the outset that appellant has not challenged the legal sufficiency of the evidence that Kazzaz committed these offenses, but solely the sufficiency of the evidence that he was also guilty of the offenses.

### A. Standard of review

We review evidentiary sufficiency challenges under the standard set forth in *Jackson v. Virginia*. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The reviewing court must consider the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*,

5

443 U.S. 307, 319 (1979); *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

The jury is the sole judge of the credibility of witnesses and the weight to afford testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). When the record supports conflicting inferences, the reviewing court presumes the trier of fact resolved the conflicts in favor of the State and defers to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When the charge authorizes the jury to convict the defendant on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Our role on appeal is simply to ensure that the evidence reasonably supports the jury's verdict. *Montgomery*, 369 S.W.3d at 192.

## B. Party liability

The law of parties in the Texas Penal Code defines when a person may be held criminally responsible for the conduct of another. The statue provides that each party to an offense may be charged with the offense. Tex. Penal Code Ann. § 7.01(b) (West 2011). Under section 7.02(a)(2), a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). Section 7.02(b) provides:

6

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

Tex. Penal Code Ann. § 7.02(b) (West 2011).

In determining whether the accused participated as a party, the court may examine the "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara*, 152 S.W.3d at 49.

### C. The evidence is legally sufficient to find that appellant was a party to the aggravated robbery.

Viewed in the light most favorable to the verdict, we hold the evidence is legally sufficient for a rational trier of fact to find that appellant was a party to the aggravated robbery. A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2) (West 2011). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. Tex. Penal Code Ann. § 31.03(a) (West 2011). Appropriation is unlawful if it is without the owner's effective consent. Tex. Penal Code Ann. § 31.03(b)(1) (West 2011).

A person commits aggravated robbery if he uses or exhibits a deadly weapon during the commission of a robbery. Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). A firearm is per se a deadly weapon. Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 2011).

As noted above, appellant does not dispute that there is sufficient evidence Kazzaz committed an aggravated robbery at the bank. Although appellant contends the evidence concerning his own guilt was completely contradictory, our role is not to resolve conflicts in the evidence. *Clayton*, 235 S.W.3d at 778. Instead, we presume the jury resolved conflicts in favor of the verdict. *Id.* Evidence of events before, during, and after the commission of the offense— detailed above—shows that appellant visited the bank two days prior to the robbery. A call between the two cell phones found at the scene occurred during the heist, and a witness testified that Kazzaz was wearing a bluetooth earpiece. Appellant also exited the driver's side of the vehicle after the chase ended, supporting a finding that he acted as the getaway driver. *See Hooper v. State*, 255 S.W.3d 262, 266 (Tex. App.—Waco 2008, pet ref'd). These facts alone are sufficient for a rational juror to find beyond a reasonable doubt that appellant aided the commission of the aggravated robbery with the requisite intent. *See Guevara*, 152 S.W.3d at 49.

Moreover, the police found an extra license plate inside the van and two different license plate numbers were reported by officers during the pursuit. This evidence indicates either that appellant changed the license plates or that Kazzaz changed them while appellant remained as driver rather than taking advantage of an opportunity to leave. In either event, a rational jury could conclude that appellant was a willing participant in the robbery and subsequent escape.

8

Although appellant correctly notes that none of the evidence establishes that he used or exhibited a weapon or threatened an individual during the commission of the offense, such facts need not be demonstrated in order to establish guilt under the law of parties. Indeed, the Legislature abolished the distinction between accomplices and principals, allowing each party to an offense to be charged with the offense. *See* Tex. Penal Code Ann. § 7.01(c) (West 2011). Thus, to uphold appellant's conviction, the evidence is sufficient if, as here, it permits a rational juror to conclude beyond a reasonable doubt that appellant was a party to the offense. Tex. Penal Code Ann. § 7.01(b).

**D.    The evidence was legally sufficient to find appellant was a party to the aggravated assault with a deadly weapon.**

With regard to appellant's conviction for aggravated assault of McGaw with a deadly weapon, we consider whether a rational jury could have convicted appellant as a party to a secondary offense under section 7.02(b). For a defendant to be found guilty under that section, the jury must find that the defendant was part of a conspiracy to commit one felony, that a co-conspirator committed a second felony in attempting to carry out the conspiracy, and that the second felony was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. Tex. Penal Code § 7.02(b). We examine the totality of the circumstances to determine whether, on the facts of each case, a particular offense committed by a co-conspirator was "reasonably foreseeable" within the scope of the unlawful agreement. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013).

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1) (West 2011). A person commits aggravated assault if he uses or exhibits a deadly weapon during

9

the commission of the assault. Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). Aggravated assault constitutes a first-degree felony if the actor is in a motor vehicle, knowingly discharges a firearm at or in the direction of a vehicle, is reckless as to whether the vehicle is occupied, and causes serious bodily injury to any person. Tex. Penal Code Ann. § 22.02(b)(3) (West 2011).

In *Hooper v. State*, the defendant challenged his conviction of aggravated assault of a public servant on legal sufficiency grounds. *Hooper v. State*, 214 S.W.3d 9, 11 (Tex. Crim. App. 2007). When apprehended, the defendant was driving a car that had fled the scene of a robbery. *Id.* at 12. The car was spotted by a game warden, who had to drive at a speed exceeding 100 miles per hour to catch up. *Id.* The car slowed down, pulled over, and came to a complete stop. *Id.* One of the occupants exited the car and fired a shot at the warden before fleeing into the woods nearby. *Id.* The defendant remained at the scene, never tried to escape, had no weapons on him, and never gave the officers any trouble. *Id.* Nevertheless, he was convicted by a jury under the law of parties. *Id.* at 11.

On remand from the Court of Criminal Appeals, the court of appeals held that, viewing the evidence in the light most favorable to the verdict, being the driver of a getaway car when it was pulled over permitted an inference that the defendant was also driving the getaway car at the scene of the robbery that had occurred thirty minutes earlier. *Hooper v. State*, 255 S.W.3d 262, 266 (Tex. App.—Waco 2008, pet. ref'd). The court observed that a rational juror could infer that as the getaway driver, the defendant knew that the other passengers were going to rob the store and that they were armed. *Id.* From this evidence, a juror could infer that the defendant conspired to commit aggravated robbery and that he should have anticipated one of his co-conspirator's aggravated assault of the game warden during the getaway. *Id.* In accordance with the Court of Criminal

10

Appeals' prior decision in the case, the court of appeals thus held that these multiple, reasonable inferences, when considered with the cumulative force of the direct and circumstantial evidence, were legally sufficient for a rational juror to find beyond a reasonable doubt that appellant was a party to the aggravated assault of a public servant under the conspiracy theory of liability. *Id.*

Considering the totality of the circumstances and the multiple, reasonable inferences that can be drawn therefrom, we hold the evidence in this case was likewise legally sufficient for a rational jury to find beyond a reasonable doubt that appellant and Kazzaz conspired to rob the bank, that the assault of McGaw was committed in furtherance of the unlawful purpose, and that appellant should have anticipated the assault as a result of carrying out the conspiracy. Appellant's visit to the bank two days prior to the robbery, his exit from the driver's side of the getaway van, and the recovery of two cell phones that were communicating during the robbery are sufficient facts for a rational jury to conclude that appellant and Kazzaz conspired to rob the bank. Appellant does not dispute that Kazzaz committed the first-degree felony of aggravated assault of McGaw with a deadly weapon. Furthermore, a jury could easily find that this offense was committed in furtherance of the unlawful purpose because, as in *Hooper*, it occurred as Kazzaz and appellant were attempting to evade arrest by law enforcement officers. Additionally, a juror could conclude that appellant, as the getaway driver, knew Kazzaz was armed with a deadly weapon and that the van contained multiple firearms—among them an AK-47—and numerous rounds of ammunition. *See Hooper*, 214 S.W.3d at 15 (holding juries are permitted to draw multiple, reasonable inferences from the evidence as long as each inference is supported by evidence presented at trial); *see also Hooper*, 255 S.W.3d at 266. Thus, a rational

11

juror could find appellant should reasonably have foreseen that the aggravated assault might follow as a result of carrying out the conspiracy.

We do not suggest that every time two or more individuals conspire to commit a robbery, they should anticipate an aggravated assault of an innocent bystander will occur. But the numerous guns involved in this case evidence "a plan fraught with risks of violence." *Galvana-Cerna v. State*, 01-12-00324-CR, 2014 WL 4335597 at * 7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2014, no pet.). Accordingly, a rational jury could have found appellant criminally responsible for the aggravated assault with a deadly weapon beyond a reasonable doubt.

**E.    The evidence was legally sufficient to find appellant was a party to the aggravated assault of a police officer.**

We likewise hold the evidence was legally sufficient to convict appellant of aggravated assault of a public servant under the law of parties. Aggravated assault is a first-degree felony if committed against a person the actor knows is a public servant and the public servant is lawfully discharging an official duty. Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2011). Under the law, an actor is presumed to have known the person was a public servant if the public servant was wearing a distinctive uniform or badge indicating that person's employment as a public servant. Tex. Penal Code Ann. § 22.02(c) (West 2011).

The evidence detailed above supports a finding by a rational jury that appellant acted with the intent to aid the commission of the offense and did in fact aid the commission of the offense. The driver of the van traveled to an isolated area and came to a sudden stop before Kazzaz opened the rear doors and fired at Scott. The driver then drove the van away from the scene. Because appellant exited the driver's side door when he was apprehended, there is sufficient evidence for a rational juror to conclude that appellant was driving the van when Kazzaz

12

committed the offense. Consequently, the evidence is legally sufficient to support appellant's conviction as a party under section 7.02(a)(2). Additionally, as shown by our discussion of the *Hooper* case above, there was legally sufficient evidence for a rational jury to find appellant criminally responsible for the secondary offense of aggravated assault of a public servant as a co-conspirator under section 7.02(b). We therefore overrule appellant's legal sufficiency challenges.

## II. The trial court did not err in correcting a charge error.

In his second issue, appellant contends that the trial court erred by providing a corrected charge to the jury after deliberations had begun because the prerequisites of Article 36.16 of the Texas Code of Criminal Procedure had not been met.

Article 36.19 of the Code of Criminal Procedure provides separate standards of review for preserved and unpreserved errors relating to the jury charge. *Jimenez v. State*, 32 S.W.3d 233, 237 (Tex. Crim. App. 2000). If an error was the subject of a timely objection in the trial court, reversal is required if the error "was calculated to injure the rights of the defendant"—that is, the defendant suffered "some harm." *Id.* If there was no objection, we will reverse only if it appears from the record that appellant was denied a "fair and impartial trial," and therefore suffered "egregious harm." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm occurs when the error "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

Neither standard of harm applies, however, unless there is error in the jury charge. *Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998). Disregarding a requirement of Article 36.16 is an error to which these standards apply. *Id.*; *see*

Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Teamer v. State*, 429 S.W.3d 164, 172 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Accordingly, we begin by considering whether the trial court complied with Article 36.16.

Appellant asserts that providing a corrected jury charge was erroneous because Article 36.16, with certain express exceptions not applicable here, precludes the trial court from amending the charge after closing arguments have ended. *See* Tex. Code Crim. Proc. Ann. art. 36.16 (West 2006) (providing that after jury arguments begin, no further charge shall be given to the jury "unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony"). The Court of Criminal Appeals has construed Article 36.16 to accommodate the trial court's post-argument correction of an erroneous charge, however. *See Smith v. State*, 898 S.W.2d 838, 854–55 (Tex. Crim. App. 1995); *Bustillos v. State*, 464 S.W.2d 118, 125 (Tex. Crim. App. 1971) ("[T]he court may before verdict withdraw and correct its charge if convinced an erroneous charge has been given."); *Teamer*, 429 S.W.3d at 172–73; *see also Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013) ("The trial judge is ultimately responsible for the accuracy of the jury charge and accompanying instructions.") (internal quotation marks omitted).

In this case, the trial court mistakenly omitted some language in its jury charge during the punishment phase. The charge informed the jurors that if they sentenced appellant to a term of imprisonment, he would not be eligible for parole until he served one-half of the imposed prison sentence. The instruction was incomplete. Section 508.145 of the Texas Government Code[1] provides that an

---

[1] The section is applicable to inmates serving a sentence for aggravated robbery or inmates who were convicted as a party to an offense in which a deadly weapon was used or exhibited if they knew that a deadly weapon would be used or exhibited. *See* Tex. Gov't Code Ann.

14

individual is not eligible for parole until the time served equals one-half of the sentence imposed *or 30 years, whichever is less*. Tex. Gov't Code Ann. § 508.145(d)(1) (West 2012) (emphasis added). Because, as appellant's trial counsel conceded, the court corrected an erroneous charge, the court did not err by providing the corrected instruction after deliberations had begun. *See Smith*, 898 S.W.2d at 854-–55; *Teamer*, 429 S.W.3d at 172–73. Given the lack of an error, we need not examine whether appellant suffered any harm as a result of the trial court's correction. *Posey*, 966 S.W.2d at 60. We overrule appellant's second issue.

## III.   The trial court did not err by including a conspiracy instruction in its jury charge.

Appellant challenges his conviction for aggravated assault with a deadly weapon on a third ground, asserting that the trial court erred by instructing the jury on co-conspirator liability. An instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties. *Gilmore v. State*, 397 S.W.3d 226, 244 (Tex. App.—Fort Worth 2012, pet ref'd). Because we have held that the evidence was legally sufficient to support a finding that appellant was criminally responsible for the aggravated assault as a co-conspirator under the law of parties, we overrule this issue.

---

§ 508.145(d)(1).

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/    J. Brett Busby
Justice


Panel consists of Justices Boyce, Busby, and Wise.

Publish — TEX. R. APP. P. 47.2(b).

16