**Affirmed and Memorandum Opinion filed October 11, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-21-00417-CR

---

### LUCINA LORENA BALTAZAR, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1553249**

---

### MEMORANDUM OPINION

A jury convicted appellant Lucina Lorena Baltazar of aggravated assault with a deadly weapon. *See* Tex. Penal Code § 22.02(a)(2). Appellant raises five issues on appeal. In her first issue, appellant argues the evidence was insufficient to rationally conclude brass knuckles were a deadly weapon. In her second and third issues, appellant argues that she was egregiously harmed by the trial court's jury charge because it did not define "serious bodily injury" and did not require the jury to determine whether brass knuckles were a deadly weapon. In her fourth and

fifth issues, appellant contends that, because of the alleged deficiencies in the jury charge, she was deprived of her constitutional right to a jury trial. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. We affirm.

<h1 style="text-align:center">BACKGROUND</h1>

## I. Pretrial Events

Dina Garcia, the complainant, was involved in a physical altercation with appellant outside of La Curva Bar. Complainant was struck several times in the head until she was bloody. Complainant was driven home by Sylvia Rios, owner of La Curva Bar, and was subsequently taken to the hospital by her adult daughter. Complainant was then transferred to another hospital due to concerns about her vision. There, she was treated for multiple injuries and received stitches.

Three days later, complainant arrived at the police station with a copy of appellant's Facebook profile. She recounted the events to Detective David Hobson, who believed her statement was credible and reliable. Appellant was eventually indicted for aggravated assault, specifically "intentionally and knowingly [causing] bodily injury to [complainant] . . . by striking the complainant in the face . . . [using and exhibiting] a deadly weapon, namely a brass knuckles."

## II. Trial Testimony

The parties proceeded to a jury trial where the following relevant witnesses testified: (1) Sylvia Rios, owner of La Curva Bar; (2) complainant; (3) Detective David Hobson; and (4) Jorge Chavira, appellant's friend.

Sylvia Rios testified that she witnessed complainant and appellant arguing in her bar. As Rios began closing the bar, she again saw appellant (now accompanied by Chavira) and complainant (now accompanied by a male friend) arguing. Rios ordered them outside, closed the bar, and departed with her boyfriend and

2

employees. Rios returned to the bar minutes later and witnessed appellant punch complainant in the head repeatedly as appellant pinned complainant's head against a patio table. Rios attempted to separate the two women, prompting appellant to swing at Rios. Rios noticed something "chromey" across appellant's knuckles. Rios described the object and testified the State's demonstrative brass knuckles exhibit resembled what appellant used while striking complainant. With the help of others, Rios managed to separate the women and then took complainant home in a bloody condition. Rios dropped complainant off and instructed complainant's adult daughter to take her to the hospital.

Complainant testified appellant and Chavira confronted her after she accused Chavira of cheating at cards. Complainant asserted appellant's demeanor was argumentative, and she wanted to fight. Appellant struck complainant inside the bar, and the two women pulled each other's hair until they were separated. When complainant left around closing time, she stated she moved toward a patio table for protection when she saw appellant approach her. Complainant then felt the first of many blows to her head from appellant. Complainant believed she was being hit by a rock or a bottle, and later stated she realized it was a metal object sometimes called a "mitten." Complainant stated the object looked like rings on appellant's fingers and agreed the State's demonstrative exhibit resembled what appellant used while strikingher. After appellant was separated from complainant, Rios drove complainant home. Complainant testified she was given stitches at a hospital, and it took over a month for the bruising on her face to heal. Further, she stated her eyesight was not the same after that; for about a year, one of her eyes was closed. Complainant also confirmed having multiple scars on her face and showed them to the jury.

Detective David Hobson testified he had been a Houston Police Department officer for over eleven years, six of which were spent as a detective on the

Homicide division of Major Assaults, Special Investigations, and "Murder Squad." Detective Hobson met complainant at the police station three days after the assault. Detective Hobson believed the complainant suffered serious bodily injury, which from his training and experience appeared severe. Detective Hobson affirmed that complainant's injuries from the night of the incident were consistent with known injuries caused by brass knuckles. Further, he personally had cases where brass knuckles caused serious bodily injury and knew of cases where brass knuckles had caused death. Finally, Detective Hobson identified the State's demonstrative exhibit as brass knuckles.

Jorge Chavira, appellant's friend, testified that he was at La Curva Bar the evening of the incident. Chavira stated that he was playing poker with a few other patrons when complainant drunkenly interfered with the game by revealing players' hands. Chavira then stated that complainant slapped him after he rejected her advances. Chavira testified that appellant arrived at La Curva later in the night and began fighting with complainant when complainant approached appellant and Chavira's table to "bother them." Chavira claimed that complainant pulled a support stake out of a potted plant and attempted to hit appellant with it. Chavira testified he took the stake from complainant, and a fight between complainant and appellant ensued. He stated the two women pulled each other's hair, and that appellant did not use any weapons. Further, Chavira testified that the two women departed after they were separated, and that complainant was not injured as a result of the confrontation. When Chavira was shown State's Exhibit Number 2, a photo of complainant injured and bleeding immediately following the assault, he stated that he did not see complainant in that state the night of the confrontation. He then testified that complainant's photographed injuries looked severe.

## III. Jury Charge and Verdict

Before the parties gave their closing arguments, counsel for the State and appellant both certified on the record that they had reviewed the court's charge and approved of it as written. The charge, in relevant part, instructed the jury that "a person commits the offense of assault if she intentionally, knowingly, or recklessly causes bodily injury to another." Further, the charge defined aggravated assault as (1) an assault committed where (2) "the [perpetrator] uses or exhibits a deadly weapon during the commission of the assault." "Deadly weapon" was defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its use is capable of causing death or serious bodily injury," and "bodily injury" was indicated to mean "physical pain, illness or any impairment of physical condition." These definitions are identical to the statutory language included in the Texas Penal Code. *See* Tex. Penal Code §§ 1.07(a), 22.01(a)(1), 22.02(a)(2).

The jury found appellant "guilty of aggravated assault, as charged in the indictment." The jury also made a deadly weapon finding. The trial court subsequently assessed appellant's punishment as two years in prison. This appeal followed.

## ANALYSIS

Appellant challenges her conviction in five issues. Appellant's first issue challenges the sufficiency of the evidence. Appellant argues the evidence was insufficient to rationally conclude brass knuckles were deadly weapons. Appellant's second and third issues challenge the adequacy of the jury charge. Appellant argues she suffered egregious harm because the jury charge neither defined "serious bodily injury" nor required the jury to determine whether brass knuckles were deadly weapons. In her fourth and fifth issues, appellant asserts she was deprived of a jury trial. Appellant argues she was deprived of a jury trial

5

guaranteed by the Tex. Const. art. I, § 10 and U.S. Const. amend. VI because the jury charge did not instruct the jury to determine whether brass knuckles were a deadly weapon.

## I.    The evidence is sufficient to support appellant's conviction.

In her first issue, appellant contends the evidence is insufficient to support her conviction for aggravated assault.  Specifically, appellant argues the evidence is insufficient to rationally conclude brass knuckles were deadly weapons in the manner and means of their use.

### A.    Standard of review

We review evidentiary sufficiency challenges under the standard set forth in *Jackson v. Virginia*.  *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  The reviewing court must consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

The jury is the sole judge of the credibility of witnesses and the weight to afford their testimony.  *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).  The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit.  *See Williams v. State*, 473 S.W.3d 319, 324 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).  When the record supports conflicting inferences, the reviewing court presumes the trier of fact resolved the conflicts in favor of the State and defers to that determination.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see Marshall v.*

*State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) ("We defer to the jury's finding when the record provides a conflict in the evidence."). We will uphold the verdict unless we determine any rational factfinder would have a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). Although the parties may disagree about the logical inferences that flow from undisputed facts, where there are two permissible views of the evidence, the jury's choice between them cannot be clearly erroneous. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

**B.      The record contains legally sufficient evidence to support the jury's finding that brass knuckles were a deadly weapon.**

A person commits assault if she "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 22.01(a)(1). Further, a person commits the offense of aggravated assault if she (1) "commits assault as defined [previously,]" and (2) "uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code § 22.02(a)(2). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). The plain language of this provision does not require the actor to actually intend death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Rather, an object is a deadly weapon if the actor intends a use of the object that would be capable of causing death or serious bodily injury. *Id.* "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that caused death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(46).

Appellant first asserts, "if an object *could* be a deadly weapon is [sic] some instances and not in others, the State must prove beyond a reasonable doubt that in the instance in question, it actually *was used* in a manner of use was [sic] capable

7

of causing death or serious bodily injury." Appellant further contends the deadly weapon finding "was based on the same erroneous analysis condemned . . . in *Flores* [*v. State*,]" where the court emphasized that a deadly-weapon analysis involves an assessment of the facts of the case showing the defendant's particular manner of use or intended use of the object. *See Flores v. State*, 620 S.W.3d 154, 159 (Tex. Crim. App. 2021).

In *Flores*, appellant disguised an electric drill in plastic bags and a black sleeve to imitate a gun during the commission of a robbery. *Id.* at 156. Fearing the feigned "gun," the store owner gave appellant money from the register. *Id.* In deciding whether there was legally sufficient evidence to support the finding that the drill was a deadly weapon, the Court of Criminal Appeals considered the two-step process set out in *McCain*: determine (1) whether the object could be a deadly weapon under the facts of the case; if so, (2) decide "whether the deadly weapon was used or exhibited during the offense." *Id.* at 158 (citing *McCain*, 22 S.W.3d at 502). According to the Court of Criminal Appeals, the intermediate appellate court conducted an incomplete analysis of the *McCain* process, because it relied on expert testimony which stated that a drill *could* be used to stab, drill, or bludgeon. *Id.* at 157. The Court of Criminal Appeals observed that, while there are uses for a drill that may cause serious bodily injury or death, the record in *Flores* lacked any evidence to suggest appellant used or intended to use the drill in any such manner. *Id.*

The *Flores* court ultimately reversed the intermediate appellate court, stating that its analysis was improper because it relied "on speculation about some possible use of a drill as a deadly weapon, rather than examining the actual evidence in the record to determine whether [a]ppellant intended any use (e.g., striking, stabbing, drilling) that would be *capable* of causing death or serious bodily injury." *Id.* (emphasis added).

8

By contrast, the record in the instant case provides actual evidence establishing that, when appellant used the brass knuckles on the complainant, she intended a use capable of causing serious bodily injury or death. Complainant testified that appellant hit her more than six times in the head with a metal object that was similar to the State's demonstrative brass knuckles exhibit. Complainant denied the blows were accidental. In addition, Rios testified that she saw complainant being struck or hit by appellant in an uppercut motion, as appellant held complainant's head against a table. Rios believed the strikes were intentional and agreed appellant wore a metallic weapon across her knuckles which matched the State's demonstrative brass knuckles exhibit. Appellant's blows to complainant only ceased when Rios pulled appellant off the complainant, at which time appellant attempted to strike Rios. Moreover, Detective Hobson testified that complainant's injuries were consistent with known injuries from brass knuckles, which commonly involve a lot of blood. Detective Hobson then stated brass knuckles, often weighing between a half pound and "a couple" of them, have edges which are a harder substance than bone. Based on his experience as a police officer, Detective Hobson testified that brass knuckles are capable of causing both serious bodily injury and death.

While Chavira's testimony contradicted much of Rios' and the complainant's accounts, the jury was entitled to assess the credibility of the witnesses and reconcile any conflicts in their testimony. *See Montgomery*, 369 S.W.3d at 192. After reviewing the record evidence regarding appellant's use of brass knuckles, we conclude it is sufficient to support the jury's finding that brass knuckles were a deadly weapon under the facts of this case. *See McCain*, 22 S.W.3d at 503 ("[T]he mere carrying of a butcher knife during a violent attack . . . was legally sufficient for a factfinder to conclude that the 'intended use' for the knife was that it be capable of causing death or serious bodily injury.").

9

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to support appellant's conviction for aggravated assault. *See* Tex. Penal Code § 22.02(a)(2); *Anderson*, 416 S.W.3d at 888. We overrule appellant's first issue.

## II. The trial court's jury charge was not erroneous.

Appellant's second and third issues challenge the adequacy of the jury charge. In her second issue, appellant argues the jury charge was erroneous because it did not define serious bodily injury. Appellant's third issue argues the jury charge was erroneous because it did not require the jury to determine if brass knuckles were used as a deadly weapon.

### A. Standard of review and applicable law

In each case, the trial judge must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14. We review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). An analysis of harm suffered is unnecessary when an appellate court has determined that there was no error in the jury charge. *Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998).

A charge that adequately protects an accused's rights, although not applying the law to the facts as preferred by her, is not erroneous if the jury could have acquitted her under it, had they believed her version of the facts. *Margraves v. State*, 56 S.W.3d 673, 681 (Tex. App.—Houston [14th Dist.] 2001, no pet.). In construing a jury charge, we examine the charge as a whole rather than as a series of isolated and unrelated statements. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). A jury charge that tracks the language of a particular statute is a

proper charge on the statutory issue. *Margraves*, 56 S.W.3d at 681. When a statute provides alternative means of committing an element of an offense and the indictment alleges only one of these methods, the applicable law to be included in the jury charge is limited to the method alleged in the indictment. *Uddin v. State*, 503 S.W.3d 710, 716 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

If a jury charge is erroneous, the harm analysis hinges upon whether the defendant objected to the charge. *See Marshall*, 479 S.W.3d at 843. If a charge is not objected to in the trial court, we will not reverse unless the error resulted in egregious harm such that the defendant was denied a "fair and impartial trial." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *see also* Tex. Code Crim. Proc. art. 36.19. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Under *Almanza*, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750.

## B. The trial court's jury charge properly instructed the jury on the applicable law.

An assault is heightened to aggravated assault if the person "causes serious bodily injury to another . . . *or* uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code § 22.02(a) (emphasis added). Because the statute alleges alternative methods to constitute aggravated assault, the trial court was bound to include only the method alleged in the indictment. *Uddin*, 503 S.W.3d at 716. Appellant was indicted for causing bodily injury by striking the complainant in the face and "[using and exhibiting] a deadly weapon, namely a

brass knuckles." The application section of the jury charge accurately applied the law to the facts as alleged in the indictment, and instructed the jury:

> . . . if you find from the evidence beyond a reasonable doubt that on or about the 16th day of April, 2017, in Harris County, Texas, the [appellant], did then and there unlawfully, intentionally, knowingly cause bodily injury to [complainant], by striking [complainant] in the face, and the [appellant] used or exhibited a deadly weapon, namely a brass knuckles, then you will find the [appellant] guilty of aggravated assault, as charged in the indictment.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the [appellant] and say by your verdict "Not Guilty."

Appellant alleges the omission of a "serious bodily injury" definition from the jury charge constituted error because "whether the brass knuckles caused serious bodily injury is crucial to a determination of whether their use or intended use was to cause serious bodily injury or death."[1] We disagree. The use of a "deadly weapon," rather than appellant causing "serious bodily injury," was the relevant aggravating element alleged in the indictment. As such, the State was not required to prove serious bodily injury. *Uddin*, 503 S.W.3d at 716. The definition of serious bodily injury would only be relevant to further contextualize the deadly weapon definition, which was properly included in the charge as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See* Tex. Penal Code § 1.07(a)(17)(B). This additional definition was not necessary because the jury heard Detective Hobson's testimony that brass knuckles

---

[1] Appellant relies on *Davis v. State* for this proposition, asserting that the facts are "remarkably similar" to those of the present case. 533 S.W.3d 498, 509 (Tex. App.—Corpus Christi 2017, pet. ref'd). *Davis*, however, discusses the circumstances that govern when hands may be considered deadly weapons. *Id.* at 508. Because hands are often used in cases of assault, whether they constitute a deadly weapon requires a unique analysis which is limited to cases where those facts are implicated. *See id.* For this reason, a *Davis*-analysis does not apply in the present case.

were capable of causing death and serious bodily injury, and it was permitted to draw its own inferences as to brass knuckles' capability of causing harm based on the facts and the weight of evidence presented at trial. Thus, the omission of a "serious bodily injury" definition from the charge did not constitute error.

Appellant's third issue contains two separate arguments. Appellant first contends the jury charge was erroneous because it "fails to include the *McCain-Flores-Davis* analysis that when an object is not a deadly weapon *per se*, the State must prove beyond a reasonable doubt that it was used as a deadly weapon, that is, it was used in a manner to cause death or serious bodily injury." This is a misstatement of the relevant law. It is well settled that a jury charge that tracks the language of a statute is a proper charge on the statutory issue. *E.g., Riddle v. State,* 888 S.W.2d 1, 8 (Tex. Crim. App. 1994). Here, the statute provides that a deadly weapon must only be *capable* of causing death or serious bodily in the manner of its use or intended use; thus, an object's deadly weapon determination does not hinge upon whether it was used to cause death or serious bodily injury. *See* Tex. Penal Code § 1.07(a)(17)(B). Further, it is "generally held that, if a jury-charge instruction is not derived from the [penal] code it is not applicable law under art. 36.14" of the Code of Criminal Procedure. *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (internal quotation marks omitted). As such, appellant was not entitled to an instruction derived from case-law because it may constitute an improper comment on the weight of the evidence. *Id.*

Appellant further asserts that "the application paragraph specifically said brass knuckles were a deadly weapon," removing from the jury's consideration whether the brass knuckles were capable of causing serious bodily injury or death. This assertion fails to acknowledge the abstract portion of the jury charge, which sets forth the applicable statutory provisions for aggravated assault and the relevant definitions that clarify the law. Tex. Penal Code §§ 1.07(a), 22.01(a)(1),

13

22.02(a)(2).  The application paragraph of the charge leads with conditional language, authorizing a conviction only "if" the jury finds "from the evidence beyond a reasonable doubt that" appellant committed assault by striking complainant in the face, "and the defendant used or exhibited a deadly weapon, namely a brass knuckles."  The phrase "a deadly weapon, namely a brass knuckles" identifies brass knuckles as the proposed deadly weapon, and properly restricts the jury's consideration only to the use of brass knuckles, the sole instrument alleged in the indictment.  Additionally, this phrasing links back to the abstract portion of the charge, which outlines the circumstances that govern an object's deadly-weapon status.  Finally, the conclusion of the application paragraph advises the jury that it must acquit appellant if it entertains a reasonable doubt as to any of the required elements of the crime.  Thus, the charge accurately defined the applicable statutory law, and authorized the jury to make its own findings based on the weight of the evidence.

Viewing the evidence in the light most favorable to the verdict, we conclude the jury charge properly applied the relevant law to the facts and was not erroneous.  *See Margraves*, 56 S.W.3d at 681.  As such, a harm analysis is not necessary.  *Posey*, 966 S.W.2d at 60.  We overrule appellant's second and third issues.

### III.   Appellant was not deprived of a jury trial.

Appellant's fourth and fifth issues assert that she was deprived of a jury trial guaranteed by the Texas and United States Constitutions because the charge did not instruct the jury to determine whether brass knuckles were a deadly weapon.  *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10.  We have already determined that the jury charge was proper and overruled appellant's contention that the jury was not required to make a finding on this issue.  Thus, our previous determinations dispose of these issues.  We overrule appellant's fourth and fifth

issues.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.


/s/     Jerry Zimmerer
Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

Do Not Publish — TEX. R. APP. P. 47.2(b).