**Opinion issued May 16, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00401-CR

———————————

**JESSY RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1453117**

---

## O P I N I O N

A jury convicted appellant, Jessy Rodriguez, of the first-degree felony offense

of aggravated robbery and assessed his punishment at thirty-eight years'

confinement plus a $5,000 fine.[1]  In his sole issue, appellant contends that the State failed to present sufficient evidence that he committed the offense, either as the primary actor or under the law of parties.

We affirm.

### Background

On December 30, 2014, Marissa Alvarez, the complainant, lived with her son and her parents in an apartment on Keefer Road in Tomball, Texas.  Keefer Road intersects with Highway 249 just north of the intersection of Highway 249 and FM 2920.

Around 8:00 p.m., Alvarez left her apartment by herself to buy groceries and started walking to her car.  When she left her apartment, she saw two men she had never seen before: a tall, thin man, and a shorter, "normal-sized" man.  She turned a corner onto a sidewalk and heard the men running.  Alvarez turned around and saw the taller of the two men pointing a gun at her.  This man was wearing a bandana, but Alvarez could see around his eyes and could tell that he was "light-skinned."  The other man had a slightly darker complexion.  In Spanish, the men told her not to move and to give them her purse.  She did so and "took off running back to [her] apartment," while the men "took off running in another direction" toward a fence at

---

[1]      *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011).

the southern end of the apartment complex. Alvarez did not see the men get into a car, and she did not see a third person with them.

Alvarez ran back to her apartment and told her mother that she had just been robbed. She and her mother then immediately called 9-1-1. The trial court admitted a recording of Alvarez's 9-1-1 call. Approximately five minutes after Alvarez started speaking with dispatch, another woman called 9-1-1 and reported an incident outside of a Shipley Do-Nuts shop located on Highway 249, in which three men in a white Impala attempted to rob a man. Alvarez could hear the other woman report this incident, and the 9-1-1 recording admitted by the trial court contained both Alvarez's call and the call concerning the Shipley incident. Alvarez estimated that, by car, the Shipley was a minute or two away from her apartment, and she stated that it was within walking distance.

Tomball Police Department Officer K. Finney was dispatched to Keefer Road to meet with Alvarez. While Officer Finney was driving to Alvarez's apartment, he received another dispatch directing him to the Shipley on Highway 249, which is located just south of the intersection of Highway 249 and FM 2920. Dispatch provided Officer Finney with the description of the vehicle that the men were driving during the Shipley incident, and, when he arrived at the Shipley, he was informed that the vehicle had continued south down Highway 249. Officer Finney saw the vehicle at the drive-through of a Whataburger located less than half a mile south of

3

the Shipley on Highway 249. He saw three people inside the car. Officer Finney confirmed that the license plate number of the vehicle matched the number provided by dispatch and turned on his emergency lights.

The vehicle fled the Whataburger and once again continued driving south on Highway 249. Officer Finney followed the vehicle to the parking lot of McCoy's Building Supply, located approximately two-tenths of a mile south of the Whataburger on Highway 249. Officer Finney saw two men jump out the car and start running away. One of the men, later identified as Kyle Mutters, ran towards the front of Molly's Pub, located next to McCoy's. The officers placed Mutters in custody and found bullets in his pocket.

Officer D. Sparks was also first dispatched to Alvarez's apartment before being re-routed to the Shipley Do-Nuts. By the time he arrived at the Shipley, Officer Finney had found the suspects' vehicle at Whataburger, and, just as Officer Sparks reached the Whataburger, he saw the vehicle pull out of the Whataburger and head south on Highway 249. He saw two people in the car: the driver, whom he later identified as appellant, and a passenger sitting behind the driver.

Officer Sparks followed appellant's car and Officer Finney to McCoy's. By the time he arrived at McCoy's, the doors on appellant's car were wide open, the car was still running, and no one was inside. Officer Sparks heard yelling coming from Molly's Pub, and he saw officers placing Mutters under arrest. He knew from

4

dispatch that there were potentially three people involved, so he decided to search the area for the other two suspects. During this search, Officer Sparks received information that one of the suspects, later identified as John Garcia, had gone back to the Whataburger and was waiting for someone to pick him up. Officer Sparks, along with other officers, placed Garcia under arrest.

Corporal B. Patin was also originally dispatched to Alvarez's apartment, and he joined the pursuit of the Impala at the Whataburger. Corporal Patin and his canine partner searched the area around McCoy's, but when his canine did not make an alert he placed the canine in his patrol unit and conducted a manual search. During this search, an officer called out that he had found someone in a dumpster alongside Molly's Pub, and Corporal Patin ran over to assist in placing this individual, whom he identified in court as appellant, in custody. Officer Sparks testified that the man found in the dumpster was the man he had seen driving the Impala.

Janet Barcelona, an evidence technician with the Tomball Police Department, processed appellant's Impala. Appellant's wallet, containing his driver's license, was recovered from the driver's seat of the vehicle. Alvarez's driver's license was found on the driver's floorboard, and her purse was found on the front passenger's side floorboard. Barcelona recovered three .40 caliber bullets located in the Impala's ashtray and another bullet located on the back passenger's side floorboard.

5

Detective A. Chambers requested that another officer test all three suspects for gunshot residue when they returned to police headquarters. He acknowledged that, before the test, appellant's hands had not been bagged, appellant had been transported to headquarters in the back of a police car, and Chambers was not wearing gloves when he removed appellant's handcuffs before the test.

Kristina May, a forensic chemist with the Harris County Institute of Forensic Sciences, analyzed the results of the gunshot residue tests. May testified that Mutters had a positive result for gunshot residue on the back of his right hand and Garcia had an "inconclusive" result on his right palm. Appellant had a positive result on the back of his left hand and an inconclusive result on the back of his right hand. Officers never recovered the weapon used to threaten Alvarez. The record contains no indication that Alvarez ever identified Mutters or Garcia as the men who robbed her.

The jury charge authorized the jury to convict appellant either as a primary actor or under the law of parties if it found beyond a reasonable doubt that appellant, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid Mutters or Garcia to commit the offense of aggravated robbery of Alvarez. Ultimately, the jury found appellant guilty of aggravated robbery and assessed his punishment at thirty-eight years' confinement. The jury also imposed a $5,000 fine. This appeal followed.

**Sufficiency of the Evidence**

In his sole issue, appellant contends that the State failed to present sufficient evidence that he committed the offense of aggravated robbery, either as a primary actor or under the law of parties.

**A.     *Standard of Review***

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder

resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences "as long as each inference is supported by the evidence presented at trial." *Id.* at 15. Juries are not permitted "to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id.* An inference "is a conclusion reached by considering other facts and deducing a logical consequence from them," while speculation "is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id.* at 16.

## B.    *Aggravated Robbery as a Primary Actor*

To establish that appellant committed the offense of aggravated robbery as a primary actor, the State had to prove that, while in the course of committing theft of property owned by Marissa Alvarez and with the intent to obtain or maintain control over the property, appellant intentionally or knowingly threatened or placed Alvarez

in fear of imminent bodily injury or death, and appellant used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011).

The State presented no evidence at trial that appellant was one of the two men who accosted Alvarez at her apartment complex, threatened her, and stole her purse. Alvarez did not identify appellant, either pretrial or in court, as one of the men who robbed her. Moreover, the State's theory at trial was that appellant aided Mutters and Garcia in robbing Alvarez by driving the getaway vehicle. On appeal, the State focuses solely on arguing that appellant was guilty of aggravated robbery under the law of parties. We therefore agree with appellant that the State presented no evidence that appellant committed the offense of aggravated robbery of Alvarez as a primary actor, and we turn to whether the State presented sufficient evidence that appellant committed aggravated robbery of Alvarez under the law of parties.

## C.    *Aggravated Robbery as a Party*

A person is criminally responsible as a party to the offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." *Id.* § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by the conduct of another person if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2) (West 2011); *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). Thus, to

9

establish that appellant committed the offense of aggravated robbery under the law of parties, the State had to prove that appellant, with the intent to promote or assist the commission of the offense, i.e., the robbery of Alvarez, solicited, encouraged, directed, aided, or attempted to aid Mutters or Garcia to commit the offense.

To determine whether a person is a party to an offense, we may look to events "before, during, and after the commission of the offense." *Gross*, 380 S.W.3d at 186 (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)). We may rely on circumstantial evidence to prove status as a party, but "[t]here must be sufficient evidence of an understanding and common design to commit the offense." *Id.* (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). Each fact need not point directly to the guilt of the defendant as long as the cumulative effect of the facts is sufficient to support the conviction under the law of parties. *Id.* Mere presence at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense. *Id.* "To establish guilt under the law of parties, the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose." *Nelson v. State*, 405 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

To establish a defendant's liability as a party, the State must prove that, in addition to the illegal conduct by the primary actor, the defendant "harbored the

10

specific intent to promote or assist the commission of the offense." *Barnes v. State*, 62 S.W.3d 288, 296 (Tex. App.—Austin 2001, pet. ref'd). The defendant must know that he was assisting in the commission of the offense. *Id.* The agreement to commit the offense, if any, "must be before or contemporaneous with the criminal event." *Id.*; *see Hoang v. State*, 263 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (stating same but noting that "in determining whether one has participated in an offense, the court may examine the events occurring before, during and after the commission of the offense"). "While an agreement of the parties to act together in a common design seldom can be proved by direct evidence, reliance may be had on the actions of the parties, showing by either direct or circumstantial evidence, an understanding and common design to do a certain act." *Barnes*, 62 S.W.3d at 297.

Courts have repeatedly upheld convictions under the law of parties when the evidence establishes that the defendant participated in the commission of the offense by driving the getaway vehicle. *See Williams v. State*, 473 S.W.3d 319, 325–27 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *Hooper v. State*, 255 S.W.3d 262, 266 (Tex. App.—Waco 2008, pet. ref'd); *Webber v. State*, 757 S.W.2d 51, 55 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *see also Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985) ("This Court has sustained convictions where the evidence established that the defendant participated in the commission of the offense by driving the get-away vehicle"), *overruled on other grounds by Ex*

*parte Patterson*, 969 S.W.2d 16 (Tex. Crim. App. 1998); *Gerzin v. State*, 447 S.W.2d 925, 926 (Tex. Crim. App. 1969) ("This Court has held where evidence shows participation in a robbery by driving the get-away car the evidence was sufficient to show guilt.").

Alvarez testified that two men robbed her at her apartment complex, and it is undisputed that neither of these men was appellant. After the men threatened Alvarez with a gun and stole her purse, she testified that they ran south towards a fence at the back of the property and that she ran back to her apartment. She testified that she did not see the men get into a car, and she did not see a third man with them. There were no other eyewitnesses to the robbery of Alvarez.

Alvarez ran back to her apartment, and she and her mother immediately called 9-1-1. Approximately five minutes after Alvarez called 9-1-1, another woman called 9-1-1 to report an attempted robbery at a Shipley Do-Nuts located on Highway 249, within walking distance of Alvarez's apartment. This woman reported that three men in a white Impala attempted to rob a man outside of the Shipley, and she was able to provide a description and license plate number of the car. This description and the license plate matched appellant's vehicle.

The police officers who had been dispatched to Alvarez's apartment were rerouted to the Shipley Do-Nuts, where they learned that the Impala had continued driving south down Highway 249. Officers spotted the car at a Whataburger located

12

nearby, and one officer later identified appellant as the man driving the Impala. After officers turned on their emergency lights, the pursuit of the Impala continued south on Highway 249 to McCoy's Building Supply—located less than a mile from Alvarez's apartment—where the three men abandoned the Impala. Officers ultimately arrested Kyle Mutters near the Molly's Pub located next to McCoy's, John Garcia at the Whataburger, and appellant in a dumpster alongside Molly's Pub. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."). Officers discovered appellant's wallet and identification in the driver's seat of the Impala, Alvarez's purse in the front passenger floorboard, and Alvarez's driver's license in the driver's floorboard. Officers also discovered four .40 caliber bullets in the Impala, although they did not recover a gun. Both Mutters and appellant tested positive for gunshot residue on the backs of their right and left hands, respectively.

Although Alvarez testified that she did not see appellant and she did not see the robbers get into a car, the State presented strong circumstantial evidence that appellant was working with Mutters and Garcia on the night of the robbery as the getaway driver. Based on the extremely short time-span of events, in which appellant and his car were implicated in a second robbery within minutes of the robbery of Alvarez, a jury could reasonably infer from the evidence that appellant was waiting in his vehicle out of sight of Alvarez's apartment complex for Mutters

and Garcia to commit the robbery and that appellant then drove Mutters and Garcia to the nearby Shipley Do-Nuts to commit another robbery. *See Hooper*, 255 S.W.3d at 266 ("[W]e find that Hooper's driving the getaway car when he was pulled over by [Officer] Shewmake—approximately thirty minutes after the [charged] robbery—is circumstantial evidence or allows an inference that Hooper was driving the getaway car at the scene of the robbery."). Appellant was thus witnessed within the company of Mutters and Garcia while they were in immediate flight from the robbery of Alvarez. Moreover, appellant fled in his vehicle when officers activated their emergency lights, and he, along with Mutters and Garcia, abandoned the vehicle—which contained Alvarez's purse—and hid in a nearby dumpster to avoid capture.

Viewing the evidence in the light most favorable to the verdict, as we must when reviewing the sufficiency of the evidence, a reasonable jury could have concluded beyond a reasonable doubt that appellant, with the intent to promote or assist the commission of the robbery of Alvarez, aided Mutters and Garcia to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *Gross*, 380 S.W.3d at 186. We hold that the State presented sufficient evidence that appellant was criminally responsible for the robbery of Alvarez under the law of parties.

We overrule appellant's sole issue.

14

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).