# NO. 12-16-00296-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RAHEEM MARK MILLER,* *APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Raheem Mark Miller appeals his conviction for capital murder. In three issues, Appellant argues that the evidence is insufficient to support the jury's verdict. We affirm.

## BACKGROUND

Appellant was charged by indictment with capital murder and pleaded "not guilty." The matter proceeded to a jury trial. The jury was instructed that Appellant could be found "guilty" of capital murder either as the primary actor, an accomplice, or as a conspirator. Ultimately, the jury found Appellant "guilty" as charged. Thereafter, the trial court sentenced Appellant to imprisonment for life without the possibility of parole, and this appeal followed.

## EVIDENTIARY SUFFICIENCY

In three issues, Appellant argues that the evidence is insufficient to support the jury's verdict that he is "guilty" of capital murder either as the primary actor, an accomplice, or as a conspirator.

## Standard of Review

The *Jackson v. Virginia*[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a

---

[1] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Id.*** An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. ***Id.*** at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." ***Id.***

**The Evidence at Trial**

At trial, Rudy Pittman testified that he was in his backyard on June 8, 2014, and heard two gunshots coming from Robbins Road. Pittman stated that he called 9-1-1 and looked through the fence where he saw two people running north toward State Highway 19 and a person lying in the street beside a car with its driver's door open.

Soon thereafter, Robert Garret and his wife were driving northwest on Robbins Road when they came upon a white car parked in the middle of the street and a body lying on the street next to the driver's side door. The two stopped to investigate. They discovered that the car's engine was running and the passenger door was open. They called 9-1-1 and attempted to help the man lying in the road.

According to Garret, around this time, another woman arrived on the scene. She was able to prompt the victim to identify himself to her as Cedric Collins, and he indicated to her that he had been shot. The woman left the scene before first responders arrived. She never was identified.

Chera Lambright testified that as she and her mother drove to a fast food restaurant, they observed two African-American males walking near the Athens High School softball fields. Lambright stated that the two men approached a white, four door car parked on the street by the softball fields. Lambright further stated that before they entered the car, the two men exchanged a pill bottle between them. Lambright testified that one of the men entered through the car's front, passenger side door, while the other man entered through the car's rear, driver's side door. Subsequently, as they returned from the restaurant, Lambright and her mother observed the same car parked in the middle of the street with someone lying on the ground outside of the car.

Athens Police Department Officer Wesley Hoover was the first law enforcement officer to arrive at the scene. Hoover testified that a .380 caliber firearm magazine was found lying underneath the victim's body. Hoover further testified that there appeared to have been a struggle inside the vehicle and that the victim's wallet was located inside the vehicle where other items were strewn. Hoover stated that he did not locate any shell casings outside of the vehicle.

Athens Police Department Corporal Billy Westover later arrived at the scene. Westover testified that he spoke to several witnesses at the scene. He further testified that he attempted to locate the two individuals described to him by Lambright, but was unsuccessful in doing so.

Athens Police Department Detective Adam Parkins led the investigation of the case. Parkins testified that officers located a New Orleans Saints baseball cap on the floor of the vehicle.[2] He further testified that Collins had two small entry wounds in his lower back. He also testified that there was an unsecured child seat in the back of the car and the rear passenger door of the car had child locks engaged, which made it impossible to open the rear passenger door from inside the car. Parkins stated that a pill bottle labeled "hydrocodone," a pill later determined to be Amoxicillin, two .380 caliber shell casings,[3] marijuana, and a cell phone later determined to belong to Collins were recovered from the vehicle. However, despite the recovery of the foregoing physical evidence, the police were unable to recover a firearm connected to the shooting, and attempts to match the DNA and fingerprints from the items located inside and outside Collins's vehicle were inconclusive.

Henderson County District Attorney's Office Investigator Ronny Halbert testified that he downloaded the contents of Collins's cell phone, which included text messages exchanged shortly before the shooting between Collins and "Heemi."[4] The text messages indicated that about an hour before the shooting, Collins was attempting to purchase hydrocodone from Appellant. They further indicate that, minutes before the shooting, the two had arranged to meet.

Texas Ranger Michael Adcock also investigated the scene. He testified that there were footprints on the rear passenger seat of Collins's vehicle, as well as foot prints on the car's front passenger seat. Adcock testified that, based on his investigation, he believed there had been a struggle inside the vehicle before the shooting took place. In support of this belief, he noted that, in addition to the footprints on the seats, there was blood inside the vehicle, an ashtray had been emptied, and one of the vehicle's cup holders had been broken.

Athens Police Department Detective Don Yarbrough met with Appellant three times during the course of the investigation. On June 12, 2014, Appellant came to the Athens Police station to "clear his name." Appellant stated to Yarbrough that he knew nothing about the shooting and was not present at the scene.

Subsequently, Yarbrough again met with Appellant when Appellant's mother and step-father brought him to the police station. During the ensuing recorded interview, Appellant stated

---

[2] The evidence at trial demonstrated that Appellant originally is from New Orleans, Louisiana.

[3] Parkins testified that one shell casing was located in the back seat on the driver's side and the other was located on the floorboard in the rear seating area on the passenger side.

[4] "Heemi" was determined to be Appellant's nickname.

4

that he met Collins to sell him hydrocodone, he got into the rear passenger seat of Collins's car, and Collins drove down Robbins road.[5]  According to Appellant, at some point during the drive, an unknown Hispanic man got into the car and sat behind Collins.  Appellant further stated that this man demanded money or drugs from Appellant and Collins, pulled a gun, and shot Collins.  Appellant stated that he escaped the vehicle through the front passenger window because the child lock on the rear passenger door was engaged.

On June 16, 2014, Appellant again met with Yarbrough at the police station and gave another recorded statement.  On this occasion, Appellant told Yarbrough that Michael Duke was the other person with him that day and that Duke shot Collins.  Yarbrough testified that Appellant told him that he and Duke had a conversation about a robbery on their way to meet Collins.  He further testified that Appellant stated that he "went along with it."  Yarbrough stated that Appellant told him that he saw that Duke had a gun.  Yarbrough further stated that Appellant demonstrated to him how Collins was turned toward the rear seat as he struggled with Duke, who was seated behind him, when Duke shot him.

Thereafter, Appellant met with Investigator Bobby Rachel.  In this interview, Appellant admitted he had a gun with him when he went to meet Collins.  Appellant further stated that he knew Duke had a gun.  Appellant also stated that he pointed a gun at Collins.

Rudy Jimenez testified that Appellant and Johnny Castenada[6] left his house together before the shooting and returned to his home together after the shooting.  Jimenez further testified that the two arrived back at his home on foot and that Appellant was acting "unusual" at that time.[7]

**Discussion**

In order to demonstrate that Appellant was guilty of capital murder, the State was required to prove beyond a reasonable doubt either that Appellant (1) intentionally or knowingly caused Collins's death in the course of committing or attempting to commit robbery; (2) acted with intent to promote or assist the commission of the offense" of capital murder and solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense; or (3) conspired with

---

[5] Appellant did not mention that any other person accompanied him to meet with Collins.

[6] Yarbrough testified that he believed Castenada to be the other person in the car with Appellant and Collins on the day in question.

[7] Parkins testified that Appellant stated that he gave the gun to Rudy Jimenez.  He further testified that Rudy Jimenez denied receiving a gun from Appellant.

another to commit robbery, capital murder was committed by the other conspirator in furtherance of the robbery, and Appellant should have anticipated the capital murder as a result of the carrying out of the conspiracy. *See* TEX. PENAL CODE ANN. § 7.02(a)(2), (b) (West 2011), § 19.03(a)(2) (West Supp. 2017). Specific intent to kill may be inferred from the use of a deadly weapon, unless it reasonably is apparent, based on the manner of its use that death or serious bodily injury could not have resulted. *See **Flanagan v. State**,* 675 S.W.2d 734, 741 (Tex. Crim. App. 1984).

<u>Primary Actor</u>

Appellant argues that there is no evidence supporting the jury's finding that he shot Collins. According to Appellant, he consistently maintained that he did not shoot Collins, no eyewitness testified that Appellant shot Collins, and no physical evidence supported a finding that he shot Collins.

Yet, as set forth in greater detail above, Appellant admitted that he and another person planned to rob Collins. Appellant's text messages to Collins concerning a drug transaction support that Appellant planned to meet with Collins minutes prior to when the shooting occurred. Jimenez's testimony supports that Appellant and Castenada left Jimenez's house together and arrived back at the house together, with their departure and arrival times corresponding to the time of the shooting. Moreover, the evidence demonstrates that upon their search of Collins's car, officers found loose cash, an empty pill bottle labeled "hydrocodone," and a loose pill later determined to be Amoxicillin.[8] Appellant admitted that that he had a gun and knew the other person had a gun. Thus, we conclude that there is sufficient evidence to permit a reasonable jury to find that Appellant intended to commit and engaged in the commission of robbery.

Appellant admitted that he pointed a gun at Collins.[9] Moreover, Appellant stated that he was in the rear seat and that he climbed through the front seat to exit the car after the shooting. Lambright testified that one of the men she saw entered through the car's front, passenger side door while the other man entered through the car's rear, driver's side door. Thus, a jury reasonably could find that Appellant was the sole occupant of the back seat of Collins's car just prior to the time of the shooting. Parkins testified that one of the shell casings was found in the backseat on the driver's side, while the other was found on the rear, passenger side floorboard. Parkins testified that based on his training and experience, his analysis of the crime scene, and with consideration

---

[8] Appellant admitted that he intended to sell Collins fake hydrocodone pills.

[9] *See **Flanagan***, 675 S.W.2d at 741 (permitting inference of specific intent to kill from use of deadly weapon).

6

given to Appellant's statements, he believed Collins was shot from the back seat, while he struggled with a person in the back seat.

Based on our review of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Appellant committed capital murder as a primary actor. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also* TEX. PENAL CODE ANN. § 19.03(a)(2). Appellant's first issue is overruled.

*Accomplice*

We next consider whether the evidence is sufficient to support the jury's finding that Appellant acted with intent to promote or assist the commission of the offense of capital murder and solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2). Appellant argues that there is insufficient evidence to support that he acted with the intent to promote or assist the commission of capital murder.

As set forth previously, there is sufficient evidence to permit a reasonable jury to find that Appellant intended to commit and engaged in the commission of robbery along with another person. Moreover, Parkins's testimony supports the conclusion that Collins was shot during a struggle with a person in the back seat. A rational juror could determine that the shooter formed an intent to kill in that moment in order to complete the robbery and make an escape. *See Flanagan*, 675 S.W.2d at 741; *see also Luna v. State*, No. 05-08-00998-CR, 2009 WL 2246103, at *4 (Tex. App.–Dallas July 29, 2009, no pet.) (op, not designated for publication) ("Intent to kill does not have to be formed before the trigger is pulled; it can be formed at the moment of the shooting"). Indeed, Appellant admitted that he pointed a gun at Collins and later gave the gun to Jimenez, after which point, the gun could not be located. Thus, a jury reasonably could find that Appellant, at the moment of the shooting, acted with intent to promote or assist the commission of capital murder and aided or attempted to aid the other person to commit the offense so as to complete the robbery and make their escape. *Cf. Luna*, 2009 WL 2246103, at *4. Accordingly, we conclude that there is legally sufficient evidence to support the jury's finding that Appellant committed capital murder as an accomplice. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also* TEX. PENAL CODE ANN. § 7.02(a)(2). Appellant's second issue is overruled.

*Conspirator*

We next consider whether Appellant conspired with another to commit robbery, wherein capital murder was committed by the other conspirator in furtherance of the robbery, and Appellant

7

should have anticipated the capital murder as a result of the carrying out of the conspiracy. *See* TEX. PENAL CODE ANN. § 7.02(b). Appellant argues that there is no evidence that he intended to commit a robbery or that he conspired with another to do so.

As set forth previously, there is evidence that Appellant and another person agreed to rob Collins. There also is evidence that capital murder was committed by one of the men in furtherance of the robbery. Adcock testified that the evidence caused him to conclude that there had been a struggle in the car. A jury reasonably could determine that Appellant was aware of the risks connected to committing a robbery since he and his coconspirator brought firearms along and that it is reasonably foreseeable that if firearms are used in perpetuation of a robbery, someone could be killed. Accordingly, we hold that there is sufficient evidence to support the jury's finding that Appellant committed capital murder as a conspirator. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also* TEX. PENAL CODE ANN. § 7.02(b). Appellant's third issue is overruled.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered December 13, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 13, 2017**

**NO. 12-16-00296-CR**

**RAHEEM MARK MILLER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. B-21,539)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*