**Opinion issued December 22, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00513-CR
_____

**XZAVIUS DEMARQUIS COOK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1568441**

---

## MEMORANDUM OPINION

A jury found appellant, Xzavius Demarquis Cook, guilty of aggravated robbery. Pursuant to appellant's plea bargain with the State, the trial court assessed appellant's punishment at twenty-five years' confinement. In one point of error, appellant contends that the evidence is insufficient to prove that (1) the complainant

was placed in imminent fear of serious bodily injury or death; (2) the BB gun was a deadly weapon as used; and (3) appellant committed the offense of robbery or aggravated robbery as a party or principal. We affirm.

## Background

On October 22, 2017, Shelton Lopez, the complainant, was working at the AT&T store located at Westheimer and Dunvale, in Houston. Another employee who was working with Lopez that day stepped out to bring lunch back for them. Shortly after noon, Lopez noticed a Mustang parked in reverse in a parking space in front of the store. Three men wearing hoodies and masks rushed into the store and, pointing a gun at Lopez, asked him where the cash register was. One of the men, later identified as Uric Blalock, held the gun on Lopez while the other two men began filling trash bags with money and iPhones from the store's inventory.

Lopez testified that he was afraid of the gun pointed at him and tried to remain calm and comply with the men's orders. He testified that he feared that his co-worker might return while the men were still there and that someone would get hurt. After they filled the bags with cash and inventory, the men left the store and drove away in the Mustang. Lopez was able to take a picture of the car before it left and called the police.

Houston Police Department (HPD) Detective John Kosler was assigned to investigate the robbery. He testified that the stolen cell phones had tracking devices

2

that allowed law enforcement to track the phones from the AT&T store to the Alonzo Brooks apartment complex a few hundred feet away. Detective Kosler obtained time-stamped surveillance video from the apartment complex that showed that the Mustang used as the getaway car entered the complex at 12:06 p.m. with a Cadillac following behind it. Three minutes later, the Cadillac left the apartment complex. Less than fifteen minutes later, the Cadillac was involved in a three-car collision at West Park and the Beltway. Detective Kosler testified that a witness identified appellant as the driver of the Mustang.

HPD Officer Jesse Ornales testified that he activated his sirens and lights in response to an activation call regarding a robbery in progress. The iPhone tracking device indicated that the suspects' car was traveling westbound on West Park toward the Beltway at approximately eighty miles an hour. As Officer Ornales approached the service road, he saw a major collision at the intersection, approximately five miles from the scene of the robbery. Officer Ornales spoke with Carolina Torres, who witnessed the accident.

Torres testified that she saw the Cadillac collide with two other vehicles at the intersection. She stated that she saw four men in the Cadillac, that three of them ran from the scene while one remained in the car, and that the driver returned to the car to try and remove something. Torres identified appellant as the driver of the Cadillac at the scene of the accident and at trial.

Upon arriving at the accident scene, HPD Officer Walter Reyes assisted in detaining two of the men who had run away from the scene of the accident. Officer Reyes then entered the Cadillac and discovered several unopened iPhones, cash, and a weapon on the driver's side floorboard. At trial, Officer Reyes identified the weapon as a $CO_2$-powered BB gun. The BB gun, which was admitted at trial, has a written warning on its side stating that it is "not a toy" and that "misuse or careless use may cause serious injury or death." Officer Reyes testified that the BB gun looks like a real gun and that it could cause serious injury if fired at someone. On cross-examination, Officer Reyes testified that the $CO_2$ cannister was spent and that the gun could not be fired in its present state.

HPD Officer Huan Pham arrived at the accident scene and saw two individuals running toward a nearby church parking lot. Officer Pham testified that he detained one of the individuals, whom he identified as appellant, and placed him in a patrol car.

## Discussion

Appellant contends that the evidence is insufficient to prove that he is guilty beyond a reasonable doubt of aggravated robbery. Specifically, he complains that the evidence fails to show that (1) the complainant was placed in imminent fear of serious bodily injury or death; (2) the BB gun was a deadly weapon as used; and (3)

4

appellant committed the offense of robbery or aggravated robbery as a party or principal.

## A.    Standard of Review

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  We examine all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense.  *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).  The trier of fact is the sole judge of the weight and credibility of the evidence.  *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018).  We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict.  *See Jackson*, 443 U.S. at 319. The jury may reject any part or all of a witness's testimony in order to reconcile conflicts.  *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). If the record supports reasonable, but conflicting, inferences, we presume that the factfinder resolved the conflicts in favor of the

conviction. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 326).

In a sufficiency review, we must consider the "combined and cumulative force" of the circumstances pointing toward guilt. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). When performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the weight determinations of the factfinder. *Cary*, 507 S.W.3d at 757; *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015).

## B. Applicable Law

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02(a)(2). A person commits aggravated robbery "if he commits robbery

6

as defined in Section 29.02, and he . . . uses or exhibits a deadly weapon[.]" *Id.* § 29.03(a)(2).

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

Here, the indictment alleged that appellant "on or about October 22, 2017, did then and there unlawfully, while in the course of committing theft of property owned by Shelton Lopez, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place Shelton Lopez in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, namely, a C02 powered BB Gun."

## C. "Threatens or Places in Fear of Imminent Bodily Injury or Death"

Appellant contends that the evidence is insufficient to prove that the complainant was placed in fear of imminent bodily injury or death as required by Penal Code section 29.02(a)(2). Specifically, he argues that the evidence shows that Lopez knew he could "neutralize the situation" as long as he accommodated the suspects and his co-worker did not return while the men were still in the store. Appellant also argues that no threats or demands were made toward Lopez. Thus,

7

he reasons, Lopez's fear was merely conditional and not a fear of imminent bodily injury or death.

We note that section 29.02, written in the disjunctive, covers both a situation in which the defendant actually threatens the victim and a situation in which the defendant implicitly threatens the victim and places the victim in fear. *Howard v. State*, 333 S.W.3d 137, 138–39 (Tex. Crim. App. 2011). It is not necessary for an alleged robber to make an express threat to support a finding that the victim was threatened or placed in fear. *See id.* (noting plain language of statute encompasses explicit threats and implicit threats that may lead victim to being placed in fear); *Cranford v. State*, 377 S.W.2d 957, 958–59 (Tex. Crim. App. 1964). Under the "placed in fear" language, the factfinder may conclude that an individual perceived fear or was "placed in fear" in circumstances where no actual threats were conveyed by the accused. *Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, writ ref'd) (citing *Wilmeth v. State*, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.) (concluding jury may find requisite fear from menacing glance and hand gesture, even where no verbal threats were made). While the fear may not arise merely from some temperamental timidity and instead must arise from the conduct of the accused, *see Devine v. State*, 786 S.W.2d 268, 271 (Tex. Crim. App. 1989), it is sufficient if the fear is of a nature that, in reason and common experience, is likely to induce a person to part with property against his will. *Green v. State*, 567

S.W .2d 211, 213 (Tex. Crim. App. 1978). The act of pointing a gun at an individual is, by itself, threatening conduct. *Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013).

The record reflects that Lopez was alone in the store when the three masked men entered. Lopez testified that one of the men pointed what Lopez believed was a gun at him and demanded cash. Lopez put his hands in the air while the two other men filled trash bags with cash and inventory. Lopez testified that he was afraid because there was a gun pointed at him, and he feared that he might be hurt, stating "the whole time I was thinking about the gun[.]" The complainant's testimony provides direct evidence that he was threatened and was placed in fear of imminent bodily injury during commission of the robbery. *See id.* at 839–40. The evidence is legally sufficient to support this element of the offense of robbery under section 29.02(a)(2).

**D. Deadly Weapon**

Next, appellant contends that the cumulative weight of the evidence proves that the BB gun could not cause death or serious bodily injury as required under Penal Code section 1.07. Specifically, he argues that there was no evidence that the BB gun was pointed at Lopez's face or that the robbers made any verbal threats to harm or shoot Lopez. He also points to Officer Reyes's testimony that there was a

9

spent BB pellet in the gun and that, in its then-present condition, the gun could not fire.

A BB gun is not a "firearm" or a "deadly weapon" per se. *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (stating BB gun is not deadly weapon per se). The State, however, may prove that a BB gun is a deadly weapon by presenting evidence concerning its capabilities or use. *See id.* Whether a BB gun is loaded is not significant in a deadly weapon analysis; instead, what is significant is whether there is evidence presented that the BB gun is capable of causing serious bodily injury. *Id.* "With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding." *Id.*; *see also Williams v. State*, 240 S.W.3d 293, 299 (Tex. App.—Austin 2007, pet. ref'd) (quoting *Adame*, 69 S.W.3d at 582).

The jury heard evidence that the BB gun used in the robbery was capable of causing serious bodily injury. Detective Kosler testified that officers recovered a Daisy brand $CO_2$ powered pellet gun from the driver's side floorboard of the Cadillac. He testified that the manufacturer's website states that the gun can fire projectiles at 430 feet per second. Detective Kosler testified that, based on his training and experience with firearms, it was his opinion that the gun was capable of inflicting serious bodily injury, and that it was capable of causing death if fired in the proper place. Officer Reyes testified that the BB gun had a written warning on

10

its side stating that it "is not a toy" and that "misuse or careless use may cause serious injury or death," and that the gun is "for use by ages 16 and older." Officer Reyes also stated that the gun could cause serious injury if it was fired at a person. *See Adame*, 69 S.W.3d at 581–82 (finding evidence sufficient that BB gun was deadly weapon where officer testified it could cause serious bodily injury if it were pointed and fired at someone); *see also Williams*, 240 S.W.3d at 298–99 (finding evidence sufficient for deadly weapon finding on BB gun when officer testified it could cause serious bodily injury if pointed at person's head or abdomen, and jury was read warning label that "misuse or careless use may cause serious injury or death").

With regard to appellant's assertion that the BB gun was not pointed at Lopez's face, we emphasize that the relevant inquiry is the gun's capability rather than its actual performance. *See Adame*, 69 S.W.3d at 581–82; *see also Woods v. State*, No. 11-14-00145-CR, 2016 WL 2766379, at *2 (Tex. App.—Eastland May 12, 2016, pet. ref'd) (mem. op., not designated for publication) (stating whether defendant verbally threatened or pointed pellet gun at victim's face was not necessary to court's analysis of whether pellet gun was deadly weapon in manner of its use or intended use); *Coleman v. State*, No. 07-13-00253-CR, 2014 WL 2433681, at *5 (Tex. App.—Amarillo May 27, 2014, no pet.) (mem. op., not designated for publication) (noting evidence that defendant never pointed weapon directly at victim's face but emphasizing that critical inquiry was whether gun had capacity to

cause serious bodily injury). Similarly, appellant's assertion that no verbal threats to shoot or harm Lopez were made is not relevant to our analysis of whether the BB gun was capable of causing serious bodily injury.

Appellant also asserts that the evidence shows that the gun was not capable of firing. At the time of trial, Officer Reyes testified that the $CO_2$ cannister was spent and that the gun could not be fired in its current state. However, this testimony does not establish that the BB gun was not capable of shooting at the time of the robbery. Rather, it showed only that in its then-present state at trial, nearly two years after the robbery, the cannister was spent and the gun could not be fired.

The jury could have reasonably concluded that the BB gun was a deadly weapon based upon the officers' testimony that it was capable of causing serious bodily injury and the warning labels on the weapon. *See Adame*, 69 S.W.3d at 582 ("With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding."). Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support the jury's finding that the BB gun used in this case was a deadly weapon.

## E. Aggravated Robbery as Party or Principal

Appellant also contends that the evidence is insufficient to establish that he robbed the store as a party or principal. He argues that the evidence shows only that

he was the driver of the Cadillac, and that he unwittingly gave a ride to two people who were suspects in a theft from an AT&T store.

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." TEX. PENAL CODE § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another person if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2); *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (quoting TEX. PENAL CODE § 7.02). To establish that appellant committed the offense of aggravated robbery under the law of parties, the State had to prove that appellant, with the intent to promote or assist the commission of the aggravated robbery of Mr. Lopez, solicited, encouraged, directed, aided, or attempted to aid the robbers who entered the store to commit the offense.

To determine whether a person is a party to an offense, courts "may look to 'events before, during, and after the commission of the offense.'" *Gross*, 380 S.W.3d at 186 (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)). We may rely on circumstantial evidence to prove status as a party, but "[t]here must be sufficient evidence of an understanding and common design to commit the offense." *Id.* (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim.

13

App. 2004)). "Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts [is] sufficient to support the conviction under the law of parties." *Id.* "[M]ere presence at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense." *Id.* "To establish guilt under the law of parties, the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose." *Nelson v. State*, 405 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

"To establish a defendant's liability as a party, the State must prove that, in addition to the illegal conduct by the primary actor, the defendant 'harbored the specific intent to promote or assist the commission of the offense.'" *Rodriguez v. State*, 521 S.W.3d 822, 828 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *Barnes v. State*, 62 S.W.3d 288, 296 (Tex. App.—Austin 2001, pet. ref'd)). "The defendant must know that he was assisting in the commission of the offense." *Rodriguez*, 521 S.W.3d at 828. "The agreement to commit the offense, if any, 'must be before or contemporaneous with the criminal event.'" *Id.* (quoting *Barnes*, 62 S.W.3d at 296); *see Hoang v. State*, 263 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "While an agreement of the parties to act together in a common design seldom can be proved by direct evidence, reliance may be had on the actions of the parties, showing by either direct or circumstantial

14

evidence, an understanding and common design to do a certain act." *Rodriguez*, 521 S.W.3d at 828 (quoting *Barnes*, 62 S.W.3d at 297).

Lopez testified that he saw a Mustang park in reverse in a parking space in front of the store. Three men wearing masks entered the store and one of the men pointed a gun at Lopez while the other two men filled trash bags with money and cell phones. The men left the store and drove away in the Mustang. Detective Kosler testified that a witness identified appellant as the driver of the Mustang.

The phones' tracking devices and the time-stamped surveillance video from the apartment complex showed that the Mustang entered the complex at 12:06 p.m. with a Cadillac following behind it. Three minutes later, the Cadillac left the apartment complex. The tracking device showed that the Cadillac was traveling westbound on West Park towards the Beltway at approximately eighty miles an hour. The Cadillac crashed approximately five miles from the scene of the robbery.

Blalock, the robber who pointed the gun at Lopez, was a passenger in the Cadillac when it crashed. Torres, a witness to the collision, identified appellant as the driver of the Cadillac. Torres testified that three of the men in the Cadillac ran from the scene, and that the driver returned to the car to try and remove something. Officer Pham testified that he saw several suspects, including appellant, running toward a church parking lot despite being visibly injured. Officer Reyes discovered several unopened iPhone boxes, cash, and the BB gun on the driver's side floorboard

of the Cadillac. Taken together, this evidence shows that appellant was acting with the other robbers and contributed some part towards the execution of the commission of the offense. *See Nelson*, 405 S.W.3d at 123.

Further, courts have also repeatedly upheld convictions under the law of parties when the evidence established that the defendant participated in the commission of the offense by driving the getaway vehicle. *See Williams v. State*, 473 S.W.3d 319, 325–27 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *Hooper v. State*, 255 S.W.3d 262, 266 (Tex. App.—Waco 2008, pet. ref'd); *Webber v. State*, 757 S.W.2d 51, 53–54 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). And "[e]vidence of flight evinces a consciousness of guilt." *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007).

The jury heard evidence that a witness identified appellant as the driver of the Mustang. Within minutes of leaving the store, the Mustang arrived at the apartment complex followed by the Cadillac, appellant and another man got into the Cadillac, and appellant drove the Cadillac away from the apartment complex and crashed less than five miles from the store. *See Rodriguez*, 521 S.W.3d at 829 ("Based on the extremely short time-span of events, in which appellant and his car were implicated in a second robbery within minutes of the robbery of Alvarez, a jury could reasonably infer from the evidence that appellant was waiting in his vehicle out of sight of Alvarez's apartment complex for Mutters and Garcia to commit the robbery

16

and that appellant then drove Mutters and Garcia to the nearby Shipley Do-Nuts to commit another robbery."); *Hooper v. State*, 255 S.W.3d 262, 266 (Tex. App.—Waco 2008, pet. ref'd) ("[W]e find that Hooper's driving the getaway car when he was pulled over by [Officer] Shewmake—approximately thirty minutes after the [charged] robbery—is circumstantial evidence or allows an inference that Hooper was driving the getaway car at the scene of the robbery."). The short sequence of events, coupled with the evidence of appellant's flight—both in the car at eighty miles an hour and later on foot after the crash—is sufficient evidence from which a rational jury could have concluded beyond a reasonable doubt that appellant, with the intent to promote or assist the commission of the aggravated robbery of Lopez, aided the other robbers to commit the offense. *See* TEX. PENAL CODE § 7.02(a)(2); *Gross*, 380 S.W.3d at 186. We hold that the State presented sufficient evidence that appellant was criminally responsible for the aggravated robbery of Lopez under the law of parties.

Accordingly, we overrule appellant's sole point of error.

### Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

17

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

Do not publish.   TEX. R. APP. P. 47.2(b).