# NO. 12-19-00252-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TODD ALLEN KARCH,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 402ND* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *WOOD COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Todd Allen Karch appeals his conviction for online solicitation of a minor with intent to engage in deviate sexual intercourse or sexual contact. In one issue, Appellant argues that the evidence is legally insufficient to support the trial court's judgment. We affirm.

### BACKGROUND

Appellant was charged by amended indictment with online solicitation of a minor with intent to engage in deviate sexual intercourse or sexual contact and pleaded "not guilty." The matter proceeded to a jury trial. Following the presentation of evidence and arguments of counsel, the jury found Appellant "guilty" as charged. At the conclusion of a subsequent trial on punishment, the jury assessed Appellant's punishment at imprisonment for twenty years. The trial court sentenced Appellant accordingly, and this appeal followed.

### EVIDENTIARY SUFFICIENCY

In his sole issue, Appellant argues that the evidence is insufficient to support the trial court's judgment.

**Standard of Review**

The ***Jackson v. Virginia***[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). And, unless corroboration is required by statute, the testimony of a single eyewitness can be enough to support a conviction. *See **Penn v. State***, No. 14-13-00263-CR, 2014 WL 4557878, at *2 (Tex. App.–Houston [14th Dist.] Sept. 16, 2014, pet. ref'd) (mem. op., not designated for publication). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Id.*** An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while

---

[1] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Discussion**

To meet its burden of proof that Appellant committed the charged offense, the State was required to demonstrate that he knowingly solicited over the internet C.H., a minor, to meet him with the intent that C.H. would engage in sexual contact or deviate sexual intercourse. *See* TEX. PENAL CODE ANN. § 33.021(c) (West 2016). "Deviate sexual intercourse" is defined, in pertinent part, as any contact between any part of the genitals of one person and the mouth or anus of another. *See, e.g.*, *id.* § 21.01(1) (West 2019). "Sexual contact" is defined as any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. *See, e.g.*, *id.* § 21.01(2).[2]

In the instant case, C.H. testified that in January 2017, he was a fifteen-year-old Mineola High School student living in Wood County, Texas. C.H. further testified that during that time, he was experiencing anxiety about his sexuality, particularly as to how he would be perceived by his parents if he told them he is homosexual. C.H. stated that to cope with his anxiety, he installed on his phone an internet dating application for homosexual men called "Grindr," so that he could make friends, communicate, and develop a support system with and among others in the homosexual community. C.H. further stated that when he registered his Grindr account, he used a fictitious birth date since Grindr is intended for people over age eighteen. C.H. testified that he used the account name, "Ah Who Cares," and an accompanying photograph of the top half of his face, slanted at an angle, which would be recognizable to someone who knew him. C.H. further testified that, after some time, he received a communication from someone on Grindr, whose username he could not recall, but whose account photograph depicted a Stormtrooper.[3] C.H. specified that he only

---

[2] Texas Penal Code, Chapter 33 does not define "deviate sexual intercourse" or "sexual contact."

3

accessed Grindr while at his home or at Mineola High School, both of which are located in Wood County, Texas.

C.H. stated that, initially, the communications between him and "Stormtrooper"[4] were of an introductory nature. But by late January or early February, according to C.H., the nature of the communications had become sexual. Specifically, C.H. testified, in pertinent part, as follows:

Q.      So you said after you got through the get-to-know-you phase in -- we'll call it late January/early February of 2017, you said y'all started talking about sex?

A.      Yes, wanting to meet up.

Q.      Okay. Tell me about that, "wanting to meet up."

A.      At first, I was really anxious, because I didn't know who this person was yet. I kept saying, "I'm not going to meet up with you unless I get a picture of you or" --

Q.      Well, these -- these messages wanting to meet up, can you be more specific with me and tell me what you remember?

A.      Wanting to come pick me up from my house.

Q.      Okay. So he wanted to meet at your house?

A.      Yes.

Q.      And then do what?

A.      Drive me to a place to have sex.

Q.      When you say "have sex," can you be more specific than that?

A.      His penis in my asshole.

Q.      Okay. Did he specifically ask you to do anything else or, maybe, him do anything else to you?

A.      Me to suck his dick.

Q.      Is that exactly what was said in those messages, suck his -- suck his dick?

---

[3] The record reflects that the "Stormtrooper" account photograph is a product of "Star Wars," which is a science fiction franchise comprising movies, books, comics, video games, toys, and animated shows set in a fictional universe created by George Lucas. The Star Wars story employs archetypal motifs common to science fiction, political climax, and classical mythology, as well as musical motifs of those aspects. *See Star Wars*, WOOKIEEPEDIA: THE STAR WARS WIKI, https://starwars.fandom.com/wiki/Star_Wars.

[4] Eventually, C.H. discovered that the person with whom he was communicating was Appellant. Prior to C.H.'s testimony concerning this revelation, the prosecuting attorney referred to the person with whom C.H. was communicating on Grindr as "Stormtrooper." Furthermore, the record reflects that, at some point, C.H.'s "Ah Who Cares" Grindr account was reported for his being underage. As a result, C.H. registered a new Grindr account with the username "Why Me," which he used to continue his communications with Stormtrooper.

4

A.    Yes.

Q.    Wanted you to?

A.    Yes.

Q.    Okay. And at that point, y'all had no clue who each other were -- or you didn't have any clue who he was and he had the side picture of you, and that's it?

A.    Yes.

Q.    Y'all had not exchanged names?

A.    No.

Q.    Had you told him how old you were?

A.    Yes.[5]

Q.    When did you do that?

A.    At the beginning.

Q.    When you say "the beginning," what do you mean?

A.    From the get-go, after the "what's up?"

Q.    Okay. Well, tell -- tell me about that. Why did you come out and say that so early?

A.    So that he wouldn't, like, come pick me up and then I would say my real age and him be surprised.

Q.    Okay. Do you remember what the age of the Stormtrooper -- did he tell you what age he was?

A.    It showed it on the profile.

Q.    Okay. And what did the profile say?

A.    Thirty-four.

Q.    Thirty-four? Okay. And this was, like I said, late January/early February 2017; is that fair?

A.    Yes.

C.H. testified that he declined to meet Stormtrooper in person at that time, but their communications continued throughout that summer and into the next school year. C.H. further testified that during that time, he and Stormtrooper's conversations centered around sex and

---

[5] Later, C.H. testified that he told Stormtrooper that he was sixteen years old. The record further indicates that Appellant was older than his Grindr profile indicated.

5

Stormtrooper's wanting to meet up with him to have sex at Mineola High School.[6] C.H. stated that he and Stormtrooper exchanged pictures of their respective penises during this time, as well as C.H.'s sending Stormtrooper a picture of his "backside." C.H. described the picture he received as depicting Stormtrooper's "clean shaven" genitals.[7] He also related that Stormtrooper observed in the pictures C.H. sent him that C.H. was hairy and that Stormtrooper communicated that he "wanted to shave [him]."

Eventually, according to C.H., as a result of his having suicidal thoughts and wanting a face to connect with the person with whom he was communicating, he asked Stormtrooper to send him a picture of his face. C.H. testified that Stormtrooper initially resisted this request, but ultimately relented and sent him a photograph. C.H. further testified that he recognized Appellant as the person depicted in the photograph because Appellant had worked in the technology department at C.H.'s school and used to be C.H.'s bus driver.[8] C.H. stated that he asked very specific questions to confirm that the person who sent the picture was, in fact, Appellant. C.H. elaborated that since Appellant used to drive his bus, he asked him to tell him where he lived. According to C.H., Appellant responded with the road where he dropped C.H. off when C.H. used to ride the bus. C.H. further elaborated that he asked Appellant about his daughters because his daughters were C.H.'s classmates. According to C.H., Appellant responded that he was divorced and that the two girls in question were his step-daughters. C.H. related that as a result of this information, he was satisfied that the person with whom he was communicating was, in fact, Appellant.

C.H. testified that Appellant's revelation of his identity resulted in his having anxiety about the situation. C.H. further testified that he confided with close school friends about his ongoing communications with Appellant and that his friends convinced him to cease any further communications with Appellant. C.H. stated that, as a result, he deleted the Grindr app from his phone in October 2017. C.H. further stated that, at Appellant's request, he deleted the photographs

---

[6] C.H. stated that Stormtrooper was aware of C.H.'s identity and where he went to school at this point. He further stated that Stormtrooper suggested that he would call in a "bus referral," for C.H., which the record reflects is an indication that C.H. is to receive some level of punishment for misbehavior on the school bus, and when C.H. reported to the office at the school's bus barn, he and Stormtrooper would have sex. This revelation appears later in C.H.'s testimony after he testified to having learned of Appellant's identity and, given what his testimony revealed about Appellant's multiple roles at the high school, the jury reasonably could conclude that this event happened between the time of C.H.'s learning Appellant's identity and the termination of communications between the two of them.

[7] Appellant's ex-wife later testified that when she and Appellant were married, Appellant shaved his "pubic area."

[8] The record reflects that Appellant was the transportation director at the school at this time.

6

Appellant sent him. The record indicates that no corroborating data was recovered from either C.H.'s or Appellant's respective phones, or otherwise.

Appellant argues that there is no evidence that he, in fact, intended to meet in person with C.H. Rather, he contends that his role in these communications was that of a mentor and that any suggestion by him of sexual interaction between the two was merely a matter of Appellant's fantasizing.

Section 33.021(c) contains a mens rea requirement. *See Ganung v. State*, 502 S.W.3d 825, 828 (Tex. App.–Beaumont 2016, no pet.). According to the plain language of the statute, the gravamen of the offense defined by subsection (c) is the knowing solicitation of a minor to meet a person, with the intent that the minor will engage in some form of sexual contact with that person. *See* TEX. PENAL CODE ANN. § 33.021(c); *Ganung*, 502 S.W.3d at 828; *Ex parte Zavala*, 421 S.W.3d 227, 231–32 (Tex. App.–San Antonio 2013, pet. ref'd). The prohibited conduct is the act of soliciting. *Ganung*, 502 S.W.3d at 829; *Zavala*, 421 S.W.3d at 232. The crime of soliciting a minor on the internet under Section 33.021(c) is completed at the time of the internet solicitation, and not at some later time if and when the actor actually meets the child. *Ganung*, 502 S.W.3d at 829; *Zavala*, 421 S.W.3d at 232; *see Ex parte Lo*, 424 S.W.3d 10, 22–23 (Tex. Crim. App. 2013). Because the requisite intent arises within the conduct of soliciting a minor, "it does not matter what happens after the solicitation occurs because the offense has been completed; it does not matter whether the solicited meeting actually occurs [.]" *Ganung*, 502 S.W.3d at 829 (citing TEX. PENAL CODE ANN. § 33.021(d)).

We have reviewed the entirety of the record in the instant case in the light most favorable to the jury's verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789. Having done so, we remain mindful that a jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See Lee*, 176 S.W.3d at 458. Moreover, we again note that circumstantial evidence is as probative as direct evidence in establishing guilt and alone can be sufficient to establish guilt. *See Rodriguez*, 521 S.W.3d at 827.

Here, the jury was able to consider C.H.'s explicit testimony that Appellant communicated to him in no uncertain terms his desire to meet C.H. in person for the purpose of performing anal intercourse on C.H. and/or C.H.'s performance of oral intercourse on Appellant. It was for the jury to determine whether to believe C.H.'s trial testimony and whether to deduce, as a logical consequence from his testimony concerning Appellant's statements, that Appellant asked to meet

with C.H. for these purposes because he intended for such an outcome to occur. *See Hooper*, 214 S.W.3d at 15–16. In making its determination, the jury was able to consider this testimony in conjunction with all of the evidence of record including C.H.'s recorded interview with police, as well as his testimony during cross examination that some of his previous statements were not truthful or that he omitted certain facts. *See Lee*, 176 S.W.3d at 458. The jury also was able to watch Appellant's recorded interview with police, in which he initially denied having used Grindr at all, only to admit moments later that he had, in fact, used the service once the interviewing officer suggested that police might seek to use a search warrant to verify the veracity of his denial. Moreover, the jury was able to hear Appellant, in his recorded interview, state that he had communicated in a nonsexual manner with C.H. via Grindr. The interviewing officer also testified that C.H. initially denied having conversations of a sexual nature with Appellant in communications with school officials. But she further described the nature of Appellant's online relationship with C.H. as "textbook grooming," wherein a person chooses a vulnerable child, gains that child's trust, and, ultimately, victimizes the child.

Based on our review of the record, we agree that from C.H.'s testimony, the jury reasonably could have found that Appellant made the request to meet with C.H. to engage in anal and oral sex with the intent that that meeting take place and that only C.H.'s declining Appellant's requests prevented the occurrence of Appellant's intended encounter. *See Penn*, 2014 WL 4557878, at *2. Thus, we conclude that there was ample evidence to permit the jury to find beyond a reasonable doubt that Appellant knowingly solicited over the internet C.H., a minor, to meet him with the intent that C.H. would engage in sexual contact or deviate sexual intercourse. *See* TEX. PENAL CODE ANN. § 33.021(c); *see also, e.g.*, *id.* §§ 21.01(1), (2). Therefore, we hold that the evidence is legally sufficient to support the trial court's judgment. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 6, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

8

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 6, 2020**

**NO. 12-19-00252-CR**

**TODD ALLEN KARCH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 402nd District Court

of Wood County, Texas (Tr.Ct.No. 23,535-2018)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*