# NO. 12-19-00150-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DARRYL EARL DANIELS,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Darryl Earl Daniels appeals his conviction for engaging in organized criminal activity. In one issue, he argues that the evidence is legally insufficient to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by indictment with engaging in organized criminal activity by committing the offense of aggravated robbery as a member of a criminal street gang. Appellant entered a plea of "not guilty" and the case proceeded to a jury trial.

At trial, the state called William Freeman, the victim of the robbery. Freeman testified that he was a clerk at a Food Fast gas station in Tyler, Texas when he was robbed at gun point by two black males wearing face coverings in the early morning hours of January 16, 2013. A vehicle driven by Clarence Harris arrived at the gas station as the robbery was in progress and the two men fled on foot with less than a hundred dollars in cash, a few packs of cigarettes, and a few lottery tickets. Freeman called law enforcement and Tyler Police Department officers responded to the scene. Officer Richard Carpenter interviewed Freeman and Harris who both described the assailants as black males weighing approximately one hundred and fifty pounds and standing approximately five feet seven inches tall. Officers located one of the assailants,

Jaqun Dawson, near the Food Fast station. Dawson accidentally shot himself in the leg during his attempt to flee and was unable to move. Dawson admitted his involvement in the robbery and further identified Ashad Coats and Appellant as his accomplices. Law enforcement interviewed Coats who admitted to his involvement in the robbery. Coats also confirmed Appellant's involvement in the robbery.

Dawson testified to the circumstances surrounding the robbery. He stated that he was at a friend's house when he received a text message from Coats about an "easy lick."[1] Dawson testified that Coats picked him up and the two then picked up Appellant. Dawson testified that the three initially tried to rob a drug dealer but were unsuccessful. The trio then decided to rob the Food Fast gas station. Dawson testified that he and Appellant put on gloves, disguised their faces, and hid in a nearby wooded area. After a customer left the store and Freeman went out for a break, Dawson and Appellant approached Freeman with their guns pointed and ordered him to open the cash registers. However, a truck approached the gas station during the robbery and Dawson and Appellant fled to the vehicle where Coats was waiting to drive them away. During their escape, Dawson accidentally shot himself in the leg and was unable to make it to the getaway car before Coats and Appellant left the scene.

Karlesha Pipkins, Coats's girlfriend, testified that Dawson, her cousin, was staying with Pipkins and Coats in the weeks preceding the robbery. Pipkins was acquainted with Appellant but did not know him well. Pipkins testified that she was preparing for work at around 10:00 a.m. on January 15 when she overheard Dawson, Coats, and Daniels talking about "hitting a lick." Pipkins testified that she believed Appellant was the individual discussing "hitting a lick."

When law enforcement interviewed Appellant about the robbery, he told Tyler Police Department Detective Dennis Matthews that "[t]here isn't anything that ties me to this." Appellant denied his involvement and told Matthews he did not know the answers to many of his questions. Matthews showed Appellant a picture of the Food Fast station that was robbed and asked Appellant if he was familiar with the store. Appellant told Matthews that he thought he had "seen it on the news before." Appellant did not mention that he regularly visited the Food Fast in question.[2] However, Matthews showed Appellant a still photograph from the surveillance

---

[1] According to testimony from Tyler Police Department Detective Dennis Matthews, an "easy lick" and "hitting a lick" are slang terms used to refer to committing robbery.

[2] Freeman testified that he was familiar with Appellant because he was a regular customer in the store. However, Freeman was unable to identify the robbers because their faces were obscured by coverings.

footage from Food Fast that depicted the two armed robbers. Matthews pointed to Dawson, then pointed to the other robber and asked Appellant: "is this person you." Appellant responded that "he didn't know."

The State called Detective Chris Miller with the Tyler Police Department, who serves as the agency's gang intelligence officer. Miller explained that, in Texas, a criminal street gang is three or more persons that have identifiable signs, symbols, or leadership and regularly and continuously engage in criminal activity. Miller testified that he documents and investigates members of various criminal street gangs that operate in Tyler, Texas. Miller testified that Coats is a documented, self admitted member of the "Westside Rollin' 60s," a local criminal street gang that defines itself as a "Crip" gang and draws membership primarily from members of the black community who reside on the west side of Tyler.[3] The State introduced photographs of Coats with tattoos that Miller described as representative of his membership in the Westside Rollin 60s criminal street gang. The State introduced photographs of Dawson and Appellant holding up "W" hand signs, which according to Miller, stand for "Westside" and is a reference to the Westside Rollin 60's gang. Miller testified that based on the totality of the evidence, he believed Appellant committed the offense of aggravated robbery as a member of a criminal street gang.

At the conclusion of the trial, the jury found Appellant "guilty" and sentenced him to imprisonment for twenty years. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant argues that the evidence is insufficient to support his conviction. Specifically, he argues that the State did not offer sufficient evidence to corroborate Dawson's testimony, because Dawson is an accomplice.

The State counters that the evidence corroborating Dawson's testimony is sufficient to sustain Appellant's conviction. Specifically, the State points to the testimony of Pipkins, as well

---

[3] Miller explained that the original "Crip" gang is a criminal organization that originated many years ago in California, and that the California Crip gang adopted various symbols, cultures, and rituals. Miller testified that the color blue is used by many Crip gang members as an identifier along with various hand signs. Miller clarified that modern criminal street gangs are geographic and regionalized. He explained that gangs in areas such as Tyler, Texas likely have no affiliation with Crip gangs in other areas and thus may have their own practices and rituals that differ from the original Crip gang or even Crip gangs in other states or cities.

as statements made by Appellant to law enforcement and the fact that Appellant is physically similar to the witness descriptions of the gunmen.

**Standard of Review and Applicable Law**

The *Jackson v. Virginia*[4] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186.

A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted to reach conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them,

---

[4] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

## Accomplice Witness Testimony

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art 38.14 (West 2005).

Such evidence "is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (citing *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009)). According to the court of criminal appeals,

> No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. Nor must the non-accomplice evidence directly link the accused to the commission of the offense. While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration.

*Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) (citations omitted). In determining whether the non-accomplice evidence tends to connect the defendant to the commission of the offense, "we view the evidence in the light most favorable to the jury's verdict." *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008).

A person commits the offense of engaging in organized criminal activity if he commits an enumerated offense as a member of a criminal street gang. *See* TEX. PENAL CODE ANN. § 71.02 (a) (1) (West Supp. 2019). Aggravated robbery is an enumerated offense. *Id.* A person commits aggravated robbery if, in the course of committing theft and with intent to obtain or

maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. *See id.* §§ 29.02 (a) (2); 29.03 (a) (2) (West 2019). A firearm is a deadly weapon. *See id.* § 1.07 (17) (West Supp. 2019).

When determining the sufficiency of corroborating evidence, we eliminate the testimony of the accomplice and examine whether the remaining evidence tends to connect the accused to the offense. *Gaston v. State*, 324 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Corroboration evidence may be direct or circumstantial and need not, standing alone, establish the guilt of the accused. *See id.* Nonetheless, the corroborating evidence must "tend to connect" the accused to the commission of the offense. *Id.* If the corroborating evidence does no more than point the finger of suspicion at the accused, then we must reverse. *Id.*

**Analysis**

Appellant argues that, after disregarding Dawson's testimony, we are left with the following facts supplied by Pipkins's testimony:

1. [Appellant] was present at [Pipkins's] apartment with [Dawson and Coats] the day before the robbery; and

2. At that time he said 'something about hitting a lick, but that's it.'

Appellant argues that these two facts are insufficient to connect him to the crime because Pipkins's testimony is vague and does not reference any specific act to be undertaken "short of some, presumably criminal, 'doing something for money [sic].'" Appellant further argues that Pipkins's testimony is insufficient corroborating evidence because Appellant's statement about "hitting a lick" was not made at or near the time of the robbery's commission. Appellant maintains that the "mere presence of the accused in company with [a co-defendant] shortly before or after the time of the offense is not, in itself, sufficient corroboration." Appellant directs our attention to *Gaston*, a case he describes as similar to the facts at hand.

In *Gaston*, the appellant was charged with two convenience store robberies. *Id.* at 907. Video surveillance from both robberies depicted a single masked individual, dressed in black. *Id.* Clerks from neither store were able to identify the assailant. *Id.* The only relevant information they could provide was that a small handgun was used in the commission of the first robbery and that approximately two thousand dollars was taken in the second robbery. *Id.*

On appeal, the court was considering the appellant's conviction for the second robbery.[5] *Id.* at 908. At trial, the appellant's accomplice testified that he assisted the appellant in the commission of the robberies as the getaway car driver. *Id.* at 907-08. To corroborate the accomplice's testimony, the State called two other witnesses. The first witness, Lavetta Williams, testified that she purchased a small gun from the appellant in the same month that the robberies occurred. *Id.* at 908. The gun was not available at trial, but the witness testified that it resembled the gun that was displayed in the convenience store footage from the first robbery. *Id.* The second witness, Crystal Nelson, testified that she saw the appellant and the accomplice on the day of one of the robberies at a backyard gathering. *Id.* She testified that the accomplice and the appellant borrowed her car late that afternoon. *Id.* She did not know where they went or how long they were gone, but they returned and the appellant paid her sixty five dollars from a wad of cash as compensation for allowing him to borrow her car. *Id.* The court of appeals held that the testimony from the non-accomplice witnesses was insufficient because it merely created a suspicion of guilt without tending to connect the appellant to the actual robbery. *Id.* at 909. The court reasoned that

> Nelson gave no indication as to the purpose, destination, or duration of appellant's trip. Though she remembered lending her car in the late afternoon, she could not specify any window of time that might link appellant's period of absence to the commission of the robbery. Her only remotely inculpatory testimony was that appellant paid her from a roll of five-dollar bills, but we fail to see how that provides sufficient corroboration. Nelson admitted that she did not know whether appellant had any money when he first arrived at her barbecue. Except for the thirteen five-dollar bills she personally received, Nelson could not quantify how much money remained in appellant's "wad of cash." Accordingly, the record does not reflect how much money appellant had overall, or whether it would substantiate the clerk's claim of two thousand dollars stolen or [the accomplice's] observation of at least four hundred dollars.

*Id.* The court determined that Williams's testimony was insufficient to corroborate the accomplice's testimony because her testimony related to the first robbery, not the second robbery. *Id.* at 911. The court reasoned that William's testimony may properly corroborate the accomplice's testimony for the first robbery, but in no way tended to connect the appellant to the second robbery that was on appeal. *Id.* The court further rejected the State's contention that the surveillance footage corroborated the accomplice's testimony because the jury was able to compare the appellant's physique to the figure in the video. *Id.* The court reasoned that the

---

[5] The jury acquitted Appellant of the first robbery. *Gaston v. State*, 324 S.W.3d 905, 908 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

figure in the video was masked and fully concealed by his clothing, and that under the circumstances, a general silhouette in a video is insufficient to connect the appellant to the robbery. *Id.* Ultimately, the court held that the accomplice's testimony was not sufficiently corroborated because, after excluding the testimony of the accomplice, the only remaining evidence established only that the appellant was in the company of the accomplice shortly before or after the time of the offense. *Id.*

We conclude that *Gaston* is distinguishable from this case. Pipkins testified that Appellant was in the company of the accomplice and the other coconspirator less than twenty-four hours before the offense. Pipkins testified that she heard Appellant talking to the accomplices about "hitting a lick." The jury knew from Matthews's testimony that "hitting a lick" is a slang term which refers to committing robbery. Further, Freeman and Harris described both robbers as black males standing around five feet seven inches tall and weighing approximately one hundred and fifty pounds. Appellant was in the courtroom for the trial, and we note that Appellant's arrest warrant describes him as five foot six inches tall and weighing one hundred and fifty pounds.

Moreover, Appellant made statements to police that tend to show a consciousness of guilt. When Matthews began the interview, he asked Appellant about his whereabouts when the robbery occurred. Appellant was unable to provide an alibi and simply told Matthews that "[t]here isn't anything that ties me to this." Matthews showed Appellant a picture of the Food Fast and asked him if he was familiar with the Food Fast. Appellant told Matthews that he had seen the particular Food Fast on the news and had shopped at many Food Fast stores but did not reveal that he regularly shopped at the Food Fast that was robbed. Finally, Matthews showed Appellant a still photograph from the surveillance footage depicting Dawson and the other assailant. Matthews asked Appellant if he was the other assailant, and Appellant responded, "I don't know." Unlike in *Gaston*, the State established that Appellant was with his co-conspirators, discussing committing a robbery less than twenty-four hours prior to committing the robbery. The evidence further established that Appellant matched the two eyewitnesses' physical description of the assailant, which is more probative than the surveillance video comparison in *Gaston.* Further, Appellant's statements to law enforcement show a consciousness of guilt. *See **Simmons v. State***, 282 S.W.3d 504, 510 (Tex. Crim. App. 2009) (sufficient corroboration of accomplice testimony may be furnished by conduct of defendant

which indicates a consciousness of guilt); *see also **Cueva v. State***, 339 S.W.3d 839, 881–82 (Tex. App.—Corpus Christi 2011, pet. ref'd) (any conduct on part of accused subsequent to commission of crime which indicates consciousness of guilt may be received as circumstance tending to prove that accused committed act with which he is charged); ***Gutierrez v. State***, 04-09-00674-CR, 2010 WL 3443209, at *4 (Tex. App.—San Antonio Sept. 1, 2010, pet. ref'd) (defendant's demeanor and conduct, including post-incident statements made to police, that show consciousness of guilt are relevant to issues of identity and intent).

Viewing the non-accomplice evidence in the light most favorable to the verdict, we conclude that the non-accomplice evidence does tend to connect Appellant to the offense. *See **Brown***, 270 S.W.3d at 567. We further conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant committed the offense of aggravated robbery as a member of a criminal street gang. *See* TEX. PENAL CODE ANN. 71.02 (a) (1). Thus, we overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered September 9, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 9, 2020**

**NO. 12-19-00150-CR**

**DARRYL EARL DANIELS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0391-13)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*